## ABRAHAM B. PATTERSON *vs.* MARY MILLER.

*Exceptions to Mortgage sale—Effect of omission to Advertise on the day of sale—Question whether the property should be sold in Separate lots as indicated on a Plat dividing the property into Streets and Lots, where no Streets were actually Opened—Effect of a Division of the property into Separate parcels by the location of a Rail road through it, in requiring the Parcels to be sold separately—How much to be sold in such case—How Costs to be paid on setting aside Sale.*

In February, 1871, a mortgage was made of certain property consisting of about twenty-two acres, lying partly in Baltimore County, and partly within the City of Baltimore. Though described in the mortgage as three parcels of land, these were contiguous to each other, and constituted one parcel occupied as a dairy farm. About the year 1872, or 1873, the property was surveyed and laid off into lots and streets, but no improvements were made thereon, no streets were actually opened, nor was there any physical change in the condition of the property, or in its mode of occupation, the lots and streets being merely designated on a map, and marked on the ground by stones placed there for that purpose. The W. M. Railroad was constructed upon the property, crossing it diagonally, so as to completely separate it into two parts, about four acres being on one side of the railroad and the balance on the other side. Under proceedings of foreclosure of the mortgage the property was advertised and sold in one parcel, and was purchased by the mortgagee. The mortgage required " at least twenty days notice of the time, place, manner and terms of sale, in some newspaper published in the city of Baltimore." The advertisement was printed in a newspaper published in said city, the first insertion being on the 11th of March, and the last on the 13th of April. The day of sale was the 18th of April, but through mistake, the advertisement did not appear on the morning of the day of sale as is customary in the City of Baltimore. Accompanying each advertisement, were printed numbers and letters indicating the dates upon which the same would be published, and among these were the 17th and 18th of April, the day of sale and the day before, on both of which it

was omitted. The effect of this omission as shown by evidence was to produce the impression upon the public that the sale would not take place. On exceptions to the sale filed by the mortgagor it was HELD:

1st. That the omission of the advertisement on the day of sale, was a valid and sufficient reason for setting aside the sale.

2nd. That the mortgagee on a re-sale was not bound to offer the property for sale in small lots fronting on the projected streets.

3rd. That the two parcels into which the land had been divided by the location of the railroad ought to be sold separately.

4th. That if one of those parcels should sell for enough to pay the mortgage and interest, with the taxes and costs, the other should not be offered.

5th. That the costs of the proceedings should be paid out of the proceeds of sale.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*William A. Fisher,* for the appellant.

The advertisement itself was deficient in certainty. There is no description of the property by metes and bounds, but only by references to conveyances. There is, in many cases, a loose practice, calculated to do injury to mortgagors, and it was treated as allowable in any instance only by the decision of a bare majority of the Court. *White vs. Malcolm,* 15 *Md.,* 529.

This objection standing alone, would not be sufficient, but it has great weight when taken in connection with other circumstances disclosed by the proof, and especially, that if the advertisement had been in the usual manner, *it must have been described in three distinct parcels.*

The object of an advertisement is to give a just idea of the *value* of the property, as well as of its location. *Ron-*

*kindorff vs. Taylor*, 4 *Peters*, 362; *Alexander vs. Walter's Lessee*, 8 *Gill*, 261–2.

The cases above stated were tax sales, but are relied upon as applicable to the advertisements of mortgage sales in *Kauffman vs. Walker*, 9 *Md.*, 240.

It is a principle of general application, in relation to judicial or other sales to be made, for the realizing of indebtedness, that care should be taken to sell no more of the land than a sufficiency to meet the debt. *If the land consists of several parcels, it must be sold in parcels,* or at all events, efforts must first be made to sell it in parcels. It cannot be assumed in advance, that sales cannot be made of some of the parcels for an amount sufficient to realize the debt. *Berry vs. Griffith*, 2 *H. & G.*, 345; *Nesbitt vs. Dallam*, 7 *G. & J.*, 512; *Hewson vs. Deygest*, 8 *Johns.*, (*N. Y.*,) 334–5; *Jackson vs. Newton*, 18 *Johns.*, 362; *Woods vs. Monell*, 1 *John. Ch.*, (*N. Y.*) 505; *Tiernan vs. Wilson*, 6 *Johns. Ch.*, 413, 414; *Amer. Ins. Co. vs. Oakly*, 9 *Paige*, 259, relied on in 7 *Gill*, 293; *Hubbard vs. Jarrell*, 23 *Md.*, 66.

*This property consisted of, and was conveyed in three parcels, each considerable in quantity, in view of their location.*

But even if the land had not consisted of separate parcels originally, the construction of the railroad made two separate tracts, each considerable in size, and useful for different purposes. The evidence shows that the smaller parcel to the north of the railroad, was valuable for coal-yards, lumber yards, and other uses in connection with the railroad, while the parcel on the south side would be for dwellings. The fact that the two last named parcels are essentially different, would be apparent without any oral proof.

In the language of Chief Justice KENT, the obligation to sell in parcels "tends to prevent odious speculations upon the distresses of the debtor." *Woods vs. Monell*, 1 *Johns. Ch. Rep.*, 505.

The course pursued by the mortgagee necessarily prevented the competition of all but wealthy capitalists.

They are few in number, and no great concourse of such persons was to be expected. At least two such persons, Messrs. Rieman and Brown, were prevented from becoming bidders because of the omission of the advertisement on the day of sale, and the day preceding it. Probably there were other persons so deterred.

If such a circumstance is not itself sufficient to abrogate the sale, it is enough when coupled with the other circumstances before referred to.

It is no answer that the mistake was made by the printer.

In *Johnson vs. Dorsey*, 7 *Gill*, 281, the Court says, that the purchaser in that case was a *stranger*, and that his right could not be disturbed unless the mistake was generated by his own conduct, or could be traced to the mortgagee or the trustee. The Court draws the distinction between mistakes of mere strangers, and those of the mortgagee, as trustee, and their agents or employés.

The mistake of the printer, employed by the mortgagee, is *her own* mistake.

The mistake was observed by Bennett, the auctioneer, as soon as by Patterson. The injury had then been done, and it could only be corrected by postponement of the sale.

If Patterson had omitted to notice it, his rights would not have been affected. But he did go to the Sun office, and direct attention to the omission, and this led to an immediate visit by Mr. Abell to Mr. Schley.

The exceptant has been driven to the necessity of prosecuting his exceptions by the harsh and unjustifiable sale made.

The mortgagee should be compelled to pay the costs; they should not be imposed upon the property. *Tiernan vs. Wilson,* 6 *Johns. Ch.*, 415–16.

*William C. Schley,* for the appellee.

The advertisement of the property was in all respects proper and sufficient, and was in fact published for a longer time than either the mortgage or the law required, in order to give ample notice, and to realize the highest price attainable in the depressed condition of real estate. The price obtained was in fact a very excellent one for the property. *Reeside vs. Peter,* 33 *Md.,* 126, 127; *Stevens vs. Bond,* 44 *Md.,* 510–11; *Warehime vs. Carroll,* 44 *Md.,* 515.

The non-publication of the advertisement on the day of sale was in no way attributable to the mortgagee or agents. It was confessedly an oversight of the printer. There is nothing in the mortgage requiring it to be published on the day of sale. There is no law requiring it. *Art.* 64, *sec.* 7, *of the Code*; *Warehime vs. Carroll,* 44 *Md.,* 517; *Johnson vs. Dorsey,* 7 *Gill,* 286.

Even if the Court should believe that the non-appearance of the advertisement on the day of sale, occasioned an impression in the community that the sale would not take place, yet it does not follow that this sale is to be therefore set aside. This Court has said in the case of *Johnson vs. Dorsey,* that if such an impression in fact existed, then it was the duty of the mortgagor, either before or at the sale, to communicate the same to the trustee. *Johnson vs. Dorsey,* 7 *Gill,* 289.

It is also a significant fact, that not a single witness has said that he would have given more than the property sold for.

The topography is entirely changed by the cutting through of the W. M. R. R., so that it could not have been sold in three parcels, as described in the mortgage, nor in lots, as laid down on the plat filed by the exceptant.

To have sold by the foot on the imaginary streets would have been improper, for the streets may never be opened, or may be changed. *Moale vs. Mayor, &c.,* 5 *Md.,* 322.

To have laid this property out in lots and streets, and sold it in lots calling to bind on said streets, would have been a dedication to public use of fully one-third of the entire property. Had the mortgagee taken the responsibility of doing this, it would of itself have been a ground for the filing of exceptions. *Hawley vs. Mayor, &c.,* 33 *Md.,* 280.

This sale was made under a power in the mortgage, which is analogous to a sale made under a decree of Court. *Cockey vs. Cole,* 28 *Md.,* 283 ; *Warehime vs. Carroll,* 44 *Md.,* 518.

This being so, the case of *Gould vs. Chappell,* 42 *Md.,* is not applicable, for in that case the sale was under a will, in which there was "a discretion coupled with a trust," and the distinction between a proceeding of that character, and a sale made under a decree of Court is expressly drawn in that case. *Gould vs. Chappell,* 42 *Md.,* 473.

In addition to which, it appeared that the property in that case was situated entirely in the City of Baltimore, and *two important business streets, already opened, graded and paved, passed directly through it.*

But would the mortgagee, in the absence of instructions to that effect, have been justified in dividing this property into separate pieces? The testimony shows that it is one entire piece of land, occupied by one tenant as a dairy farm, and that some parts of it are much better than others. Is not the mortgagee, in the exercise of a reasonable discretion, to be permitted to sell it in such a way as to make the good carry the bad with it? The cases go no further than to require that where the property is divided into specific farms, which are held by different persons, the sale *shall* be made in distinct parcels. *Hubbard vs. Jarrell,* 23 *Md.,* 83, 84; *Jackson vs. Newton,* 18 *Johns.,* 358, 362; *Wright vs. Yetts,* 30 *Indiana,* 187–8; *Kiser vs. Ruddick,* 8 *Blackford,* 383.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, overruling exceptions, and ratifying a sale made by the appellee under a power in a mortgage.

It appears from the record that the property was purchased by the appellant from the appellee, in February 1871, and to secure the sum of $26,500, balance of the purchase money, was mortgaged to the appellee.

It consists of about twenty-two acres, lying partly in Baltimore County, and partly within the City of Baltimore, the larger portion being in the county. Though described in the deed as three parcels of land, these lay contiguous to each other, and at the time of the purchase, constituted one parcel then occupied as a dairy farm, known as "Font Hill." The buildings upon it were worth about $800, according to the testimony of the appellant.

About the year 1872 or 1873 the property was surveyed and laid off into lots and streets, both the part lying in the county and that within the city limits; but no improvements were made thereon, no streets were actually opened, nor was there any physical change in the condition of the property, or in its mode of occupation, the lots and streets being merely designated on a map, and marked on the ground by stones placed there for that purpose.

The "Western Maryland Railroad" was constructed upon the property, crossing it diagonally; in one part through a "cut" or excavation of the depth of about twenty feet, and in another part upon a "fill" or embankment eight to twelve feet high, thus completely separating the land into two parts, about four acres being on the north side of the railroad, and the balance on the south side.

The property was advertised and sold in one parcel, as described in the mortgage, and was purchased by the mortgagee.

The appellant filed exceptions to the sale as follows :

1st. Because the advertisement of the time, manner and terms of sale, was not made for the period required by law, and by the mortgage.

2nd. Because said sale was not advertised as required by law, and said mortgage.

3rd. Because the advertisement was not inserted on the day of sale; and purchasers were misled thereby, and failed therefore to attend the sale.

4th. Because the property consisted of three parcels, when conveyed by the mortgage, and afterwards these were divided into parts by the construction of the Western Maryland Railroad through the parcels, and yet the mortgagee advertised and sold all the lands, as a whole, and in no parcels.

5th. Because the streets had been located through the lands by competent authority of law, and all sales of property in the neighborhood have been made by fronts on streets and in lots, nevertheless the mortgagee offered the property as a whole only, and not with reference to streets or in lots.

6th. Because the property ought not to have been sold in one parcel.

7th. Because the price at which the property was purchased by the mortgagee was grossly inadequate.

8th. For other reasons to be presented at the hearing.

The *first* and *second* exceptions are not supported by the proof. The mortgage requires "at least twenty days' notice of the time, place, manner and terms of sale, in some newspaper published in the City of Baltimore."

The advertisement was inserted in the "*Baltimore Sun*," and also in the "*Maryland Journal*," a newspaper printed in Baltimore County, for more than twenty days before the sale, and contains a full and sufficient description of the property to be sold.

The *third* exception raises a more serious question, and when considered in connection with the proof in the cause

presents, we think, a valid and sufficient reason for setting aside the sale.

The advertisement was printed in the "Sun" March 11th, 13th, 23rd, 30th, April 2nd, 6th, 9th and 13th.

The day of sale was the 18th of April; but through a mistake which occurred in the printing office, the advertisement did not appear on the morning of the day of sale, as is customary in the City of Baltimore.

The effect of this omission, as is very clearly shown by the evidence, was to produce the impression upon the public that the sale would not take place, and this impression was occasioned not only by the absence of the advertisement on the day of sale; but by the further fact that accompanying each advertisement were printed numbers and letters, the meaning of which was generally understood, indicating the dates upon which the same would be published; and among these were *A. 17th and 18th,* the day of sale, and the day before; on both of which days it was omitted.

It is true, as suggested by the appellee's solicitor, that the notice of sale was published for the period of time required by the mortgage, and that this did not, in terms, require the notice to be published on the day of sale; but such a publication being customary, and it having been announced in each advertisement, that it would be published on the day of sale, the natural effect of its omission on that day, was to mislead the public, and produce the impression that the sale would not take place; and the evidence shows that a number of persons were actually so misled.

Mr. Bennett, the auctioneer, it appears, not seeing the advertisement on the 18th, supposed the sale would not take place. Mr. Patterson testifies that such an impression was general in the community, and names *Mr. John A. Hambleton* and *Mr. George Gildersleve,* as two persons who were so misled and who intended to go to the sale. Both

*Mr. Alexander Rieman* and *Mr. Vachel Brown* testify that they had seen the advertisement, and intended to go to the sale and to bid for the property; but not seeing the advertisement on the day of sale, they were thereby prevented from attending, supposing the sale would not go on.

The object of the advertisement is to notify the public when and where the sale will take place, so that persons wishing to buy may attend; but where it clearly appears that this object has been defeated, and purchasers have been kept away by an accidental omission of the advertisement at the very time when the public, and all parties interested look for it, and expect to see it; it seems to us that the sale ought not to be ratified.

As in our opinion the sale ought to be set aside for the reason stated, and a re-sale made, it is proper that we should pass upon the other exceptions.

Looking at the whole evidence in the cause, we think the mortgagee was not bound to offer the property for sale in small lots fronting on the projected streets as indicated on the plat, exhibited by the appellant. The effect of offering the property in that way, would be to dedicate about one-third of it to the public for streets, lanes and alleys. *Moale vs. Mayor, &c.,* 5 *Md.,* 322, which, in the present situation of the property, seems to us would not be a judicious course of proceeding, as the streets may never actually be opened as they are designated on the plat.

It is very doubtful, according to the evidence, whether a sale in that mode could be effected consistently with the rights and interests of the mortgagee or advantageously to the appellant.

At the same time, we think the whole of the land described in the mortgage ought not to be offered for sale, in the first instance, in one parcel. The construction of the Western Maryland Railroad, in the manner before described, has changed the topography of the land, divid-

ing it into two distinct parcels, completely separated from each other in such way that they can no longer be used or occupied conveniently together. Recognizing this change, and the actual situation of the property, as it now is, the duty of the mortgagee is, in the first instance, to offer .these parcels for sale separately.

The evidence in our judgment shows that, if so offered, the property would attract a larger number of bidders and sell for a better price.

If one of the parcels should sell for enough to pay the mortgage debt and interest, with the taxes and costs, the other parcel should of course not be offered, as the mortgagee ought not to sell more of the land than is sufficient for that purpose.

The order of the Circuit Court will be reversed, and the cause remanded, the costs of this proceeding to be paid out of the proceeds of sale.

*Reversed and remanded.*