## JOHN T. BALL, Mortgagor,

### vs.

## THOMAS H. DISNEY, Assignee and Purchaser.

*Sale Under Mortgage—Adequacy of Price—Sale in Bulk.*

On an issue as to the validity of a sale under a mortgage, *held* on the evidence that the property was not sold for such an inadequate price as to justify setting aside the sale.    p. 86

On a mortgage sale of land lying in the country, *held* that it was proper to dispose of it in bulk, though it had previously been laid out in lots separated by streets, some of which lots had been sold.    pp. 87-89

*Decided March 16th, 1923.*

Appeal from the Circuit Court for Anne Arundel County (Moss, J.).

Exceptions by John T. Ball to a sale under a mortgage made by said exceptant and assigned to Thomas H. Disney, who became the purchaser at said sale. From an order dismissing the exceptions and ratifying the sale, said exceptant appeals. Affirmed.

The sale of the property as reported by Thomas H. Disney, assignee, was made for the sum of fourteen hundred dollars.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Abraham Rosenthal,* for the appellant.

*Daniel R. Randall,* for the appellee.

Boyd, C. J., delivered the opinion of the Court.

This case is before us on an appeal from an order of ratification of a sale made by Thomas H. Disney, assignee of a mortgage, to which exceptions were filed by the attorney in fact of the mortgagor. The grounds stated for the exceptions were: "First—Because there were no competitive bidders at said sale. Second—Because this property is a development, laid out in lots, and should have been offered as such, instead of as a whole. Third—Because of the inadequacy of price. Fourth—Because and for other reasons to be assigned at the hearing." The only reason assigned which requires any extended discussion is the second, and, incidentally, the third may be mentioned in connection with it. The first is of no moment under the circumstances shown, and there were no new grounds presented at the hearing.

The record is not very satisfactory, but as far as we can gather from it, Miss R. Jennie Speers originally owned the property. It was laid out into lots of twenty-five by one hundred feet for the most part, varying at some places on account of streets and roads, of which there was on the northwesterly side what is called Jumper Hole Road, near the middle of the plat a county road, and some streets. There was a mortgage on it, held by the Huntington Savings Bank, which was foreclosed, exceptions filed to a sale, and an arrangement then made to have the title taken in the name of John T. Ball, a young man who had lived with Miss Speers' mother. Including the expenses, the amount necessary to be raised was $875, and the property was conveyed to Ball, who gave a note secured by a mortgage on the property for that amount, dated the 28th of June, 1916, payable three years after date, with interest payable semi-annually. Thos. H. Disney, the appellee, guaranteed payment of the note, and on the 28th of June, 1919, the mortgage and note were taken up by and assigned to him. While Miss Speers still owned the property, she had sold a number of lots, which were scattered over the tract. As the witness Morgan, a

real estate man living at Glenburnie, testified: "The property was laid off a number of years ago, I don't know how long, and some lots sold at that time, I suppose twenty-five per cent. of it sold off in lots, leaving these small portions scattered all over the tract." There are, however, apparently some blocks on the plat between the streets on which no lots were sold. The tract is about a quarter of a mile from Earleigh Heights Station on the Short Line Railroad, between Annapolis and Baltimore. It has no water front, and is a mile and a half or more from the Severn River, but there is a road running by it that goes to the river.

Under the terms of the mortgage, the mortgagor had the right, at any interest period, to pay off the mortgage, or the sum of one hundred dollars thereon, at the rate of twenty-five dollars per acre, and upon payment in whole or in part, to secure a release for the sum paid. Not one lot was sold from the date of the mortgage (June 28th, 1916,) to the day of sale (April 22nd, 1922). Not a dollar of principal or interest was paid, and Mr. Disney paid the taxes. There had been a prior sale of the property under the mortgage, reported on August 16th, 1921, for $1,100, but exceptions were filed to that and it was set aside on March 16, 1922. There can be no serious claim that there was such an inadequacy of price at the last sale as to require it to be set aside, unless it was the result of improperly selling the property in bulk instead of by lots, or in smaller quantities than the whole. It is true that Miss Speers placed a much higher value on it, by fixing the price per lot at twenty-five dollars, and in that way fixing three hundred dollars per acre, but the evidence is decidedly against such figures. The purchase price paid by the mortgagor in 1916 was only $875, including expenses incurred in the negotiations, and, so far as the record discloses, not a single lot was sold from the time he obtained the property, and no witness has expressed a willingness to pay $1,400 for it. One lady, who had bought property in the neighborhood but had not sold any, said

that in her estimation it would be worth one hundred dollars a lot of twenty-five by one hundred feet, but, when asked if she would give $1,500 for the whole property, said, "No, I do not want it," and when asked if she knew anyone who did, replied in the negative.    Mr. Morgan, the only witness whose business and acquaintance with the property would enable him to speak knowingly about it, said he had an offer for the entire tract of $1,500, but he did not think he would advise anybody to go higher than that.    He said there are no improvements on it, that the only house which had been built on it was burned, and that "it is a piece of property covered for the most part by a small growth of pine bushes, some large trees on it, but what you call second-growth pines."    When asked on cross-examination:    "Would you call that a development or not?" he replied, "I would call that a failure in the line of development," and said again: "It is worth what I said it was, about $1,400."    The property is only assessed for taxation at seventeen dollars per acre.    There is certainly no suggestion, from anyone whose opinion the Court would be at liberty to be governed by, that there was such an inadequacy of price as to justify it in setting the sale aside for that reason alone.

Then when we come to consider the only question that could properly be taken into consideration—whether the sale in bulk would require or justify setting aside the sale, Mr. Morgan testified in answer to a question on cross-examination: "If I was called upon to sell it now, I would sell it in entire tract."    That under the circumstances would seem to be the only way it could properly be sold.    The plat spoken of is not on record, as we understand the testimony, but a number of lots have been sold at different places and, with streets laid out on the plat, it would seem to be impossible to realize as much out of it as it brought as a whole.    We are not informed how many, if any, of the lots sold were conveyed, or what shape those titles are in, but if it had been attempted to be sold by the mortgagee by lots, the plat

showing the streets and location of the lots ought to have been put on record, and some description of them given, in a way to give the purchasers title to them. But when it is seen that, in the nearly six years between the date of the mortgage and the date of the sale, not one lot was sold, if there had been an attempt to sell by lots it would seem that it would have been impracticable, if not impossible, to realize enough to pay off the principal, interest, and expenses, including the taxes paid by the mortgagee.

There are cases in our reports in which sales were set aside because the mortgaged properties were not sold or offered in parcels, instead of selling the whole, but there is no case of which we are aware where that has been done in anything like similar circumstances to those before us. For example, in *Mays* v. *Lee,* 100 Md. 227, the sale was set aside, but there were two farms involved in that mortgage, one containing 116 acres and known as the "Michael Farm" and the other containing 96 acres and known as the "Frazier Farm." There was due on the mortgage on the day of sale $3,378.31, for principal, interest, taxes, and insurance, and it was shown that the one farm, if offered alone, should have brought sufficient to pay the mortgage debt and expenses of sale. Of course, that was set aside, and cases therein referred to and other cases to the same effect could be cited. But *Patterson* v. *Miller,* 52 Md. 388, illustrates the other side of the question, although not as strongly as this case does. There was a mortgage of $26,500 on a property consisting of about 22 acres, partly in Baltimore County and partly in Baltimore City. The land was laid off in lots and streets, both in the county and city, "but no improvements were made thereon, no streets were actually opened, nor was there any physical change in the condition of the property, or in its mode of occupation, the lots and streets being merely designated on a map, and marked on the ground by stones placed there for that purpose." See how far that went beyond this tract, which is out in the country, but the Court

said: "Looking at the whole evidence in the cause, we think the mortgagee was not bound to offer the property for sale in small lots fronting on the projected streets as indicated on the plat, exhibited by the appellant. The effect of offering the property in that way would be to dedicate about one-third of it to the public for streets, lanes and alleys, *Moale* v. *Baltimore,* 5 Md. 322, which, in the present situation of the property, seems to us would not be a judicious course of proceeding, as the streets may never be actually opened as they are designated on the plat. It is very doubtful, according to the evidence, whether a sale in that mode could be effected consistently with the rights and interests of the mortgagee, or advantageously to the appellant." The Court did go on to say in that case, as the Western Maryland Railroad had divided the land into two distinct parcels, completely separated from each other in such way as they could never be used or occupied conveniently together, that the two parcels should be offered separately.

Other cases might be cited, but it is unnecessary. The facts and circumstances of this case point too strongly to the advisability, if not the necessity, of selling the tract as a whole, to justify the Court in setting aside this sale, and we could not properly do so.

*Order affirmed, the appellant to pay the costs.*