## TEN HILLS COMPANY v. TEN HILLS CORPORATION

[No. 7, April Term, 1939.]

*Decided April 26th, 1939.*

'The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELA-PLAINE, JJ.

*Eldridge Hood Young,* with whom were *Grymes & Hofferbert* and *Young & Crothers* on the brief, for the appellant.

*Harry E. Karr,* with whom was *Richard M. Carlin* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the court.

Under and by virtue of a consent decree, passed in the mortgage foreclosure proceedings of the Ten Hills Corporation against the Ten Hills Company by the Circuit Court of Baltimore City, Harry E. Karr was appointed trustee to sell the mortgaged property, which comprised a number of unimproved and vacant lots lying in Ten Hills, a suburban development in the northwestern section of Baltimore City.

Acting under that authority the trustee advertised and sold the property to Florence H. Caughy for $18,000, subject, however, to a prior mortgage, on which there was then due a balance of $20,751.37. Exceptions filed to that sale were sustained and the sale set aside. Thereupon the trustee again advertised the property and on September 6th, 1938, sold it at a public auction held on the premises to Florence H. Caughy for $18,000, subject to the lien of the prior mortgage. The Ten Hills Company, mortgagor, excepted to that sale on the grounds, (1) that the sale price was grossly inadequate, (2) that the property was inadequately and insufficiently advertised, (3) that the advertisement and plats exhibited in connection therewith were misleading, confusing and did not accurately describe the property, (4) that the terms of sale were incompatible with any fair sale of the property, (5) that the property should have been offered first by lots and then as an entirety, and (6) that the property was subject to certain beneficial restrictions not shown by the advertisement nor announced at the sale. Evidence was offered in connection with the exceptions, the parties heard, the case submitted, the exceptions overruled, and the sale ratified. This appeal is from that order.

The mortgaged property included more than fifty lots, identified on certain plats by number and section, and no description of them would have been intelligible without reference to those plats, or to other plats based on them, identifying the relative locations of the lots. In the advertisement of the first sale, which was set aside, ref-

erence was made to plats, but no adequate information as to where those plats were to be found was given. In the advertisement of the second sale, that under consideration, the advertisement itself included a plat showing the location of the lots to be sold, and provision was made for making all other plats referred to in the description of the lots available to persons interested in the sale.

The second mortgage, dated March 6th, 1929, which was guaranteed by Herman A. John and Anne S. John, provided that each of the lots described therein would be released from its operation upon the payment to the mortgagee of $500 in the first year of the mortgage, or of $750 during any year thereafter, and, while the first mortgage was not in evidence, there was testimony that each of the lots covered by it would be released upon the payment of $1200. Before the foreclosure proceedings, certain of the mortgaged lots had been released from the operation of the second mortgage, so that the trustee was only authorized to sell the lots which had not been so released. Because of the number of the lots, their relative location, the fact that some of them were parts of larger lots, and of the location of the released lots, the description of the mortgaged property found in the mortgage would not have informed a prospective purchaser of the location and extent of the property to be sold, nor would any verbal description of reasonable length have afforded that information unless supplemented by a plat.

Although the mortgaged property is described as divided into lots, identified by number and section, delineated on plats recorded and unrecorded which also indicate the existence of certain roads, or streets adjacent to them, there is nothing on the ground itself to show with any certainty the separation of the lots, or the location of the roads or streets. The land itself was overgrown with weeds and bushes, and apart from the plats and separate surveys it would apparently have been difficult, if not impossible, to identify the several lots.

Turning now to the exceptions it may be said by way of premise that the burden was not on the trustee to show that the sale was valid, but upon the exceptant to show that it was invalid, *Webster v. Archer*, 176 Md. 245, 4 A. 2nd 434, 437.

In their order, the first exception is on the ground that the sale price was grossly inadequate. The answer to that objection is that mere inadequacy of price, unless it to be so glaring and palpable as to indicate fraud or unfairness, or suggest that the trustee lacked the judgment and skill necessary to any adequate administration of the duties of his office (*Righter v. Clayton*, 173 Md. 138, 144, 194 A. 819, *Harvey v. Savings Bank*, 170 Md. 295, 297, 184 A. 228), will not be accepted as sufficient ground to set aside a sale fairly made, and there is not the slightest evidence in this case that the selling price reported by the trustee was inadequate, but on the other hand a fair inference from the evidence is that it represented the fair value of the mortgaged property. The mortgagor made no bid on the property at the sale, it made no offer at the hearing, although invited to do so, it named no one who would pay more for the property than the price reported by the trustee, it offered no evidence to show that the property was worth more than that price, and, although it had been given every opportunity to do so, it had not apparently been able to sell the property for a better price before the foreclosure.

The second and third exceptions present the objection that the sale was not adequately advertised. In the absence of any showing of prejudice, courts will not be inclined to interfere with a sale fairly made because of trivial discrepancies or inconsequential errors, nevertheless since the object and purpose of the advertisement required by the decree was to apprise the mortgagor of the proposed sale of the mortgaged property, and to give to the public such notice thereof that persons who might be interested in purchasing such property as that to be sold might know of the sale and have an opportunity of bidding on the property, any error or omission

in the advertisement, substantial enough to mislead the mortgagor or possible bidders, would have vitiated the sale. Cases illustrating the application of that rule are *Kauffman v. Walker*, 9 Md. 229, *Richardson v. Simpson*, 82 Md. 155,33 A. 457, *Reeside v. Peter*, 33 Md. 120, *Carroll v. Hutton*, 88 Md. 676, 682, 41 A. 1081, *Hebb v. Mason*, 143 Md. 345, 354, 122 A. 318, *Waters v. Prettyman*, 165 Md. 70, 74, 166 A. 431, *Long v. Worden*, 148 Md. 115, 118, 128 A. 745, where sales were set aside because errors in the advertisement were regarded as too substantial to permit the inference that they were not prejudicial, *Dickerson v. Small*, 64 Md. 395, 397, 1 A. 870, *Cooper v. Holmes*, 71 Md. 20, 17 A. 711, *Stevens v. Bond*, 44 Md. 506, 507, *Brooks v. Hays*, 24 Md. 507, where errors and discrepancies in the advertisement were treated as insufficient to require the sale to be set aside. For a discussion of the rule see *Kauffman v. Walker*, *supra; Alexander v. Walter*, 8 Gill 239; *White v. Malcolm*, 15 Md. 529; *Wood v. Patterson*, 4 Md. Ch. 335. *Patterson v. Miller*, 52 Md. 388; *Warehime v. Bldg. Assn.*, 44 Md. 512; *Dircks v. Logsdon*, 59 Md. 173; *Mahoney v. Mackubin*, 52 Md. 357; *South Baltimore, etc. Co. v. Kirby*, 89 Md. 52, 59, 42 A. 913; *Holton Park Co. v. Gary*, 133 Md. 509, 105 A. 751; 41 *C.J.* 952; *Jones on Mortgages*, sec. 1840; *Wiltse on Mortgage Foreclosure*, sec. 929.

Upon these cases and texts the rule may be assumed that a valid notice of a mortgage sale must itself so describe the property that the buying public may identify it and be informed of its location, area, nature, and improvements, or be referred by the notice to some available source of information where knowledge of those facts may be had.

Necessarily there can be no arbitrary rule of thumb for determining in a given case whether an error in the description of the property given by the notice makes it so inaccurate or misleading as to either mislead the mortgagor or the buying public, or fail to inform them, in language which a person of ordinary intelligence may understand, of the identity of the property to be sold,

but that question must be decided upon the facts peculiar to the case, interpreted in the light of practical common sense. So in *Fenner v. Tucker*, 6 R.I. 551, it was held that a notice which described the land to be sold as containing twice its actual area was sufficient to avoid the sale, because persons who might want to bid on a lot of the size of that which the trustee was authorized to sell might not be interested in a lot twice its size, although the same court, in sustaining a sale made in pursuance of an advertisement which contained an unimportant misstatement, said: "It is well settled that mere non-prejudicial inaccuracies or irregularities in the notice or conduct of a sale under a power in a mortgage will not vitiate a sale. *Newman v. Jackson*, 12 Wheat. 570, 6 L.Ed. 732; *Colcord v. Bettinson*, 131 Mass. 233; *Johnson v. Cocks*, 37 Minn. 530, 35 N.W. 436; *Stevins v. Bond*, 44 Md. 506, 511; *Schoch v. Birdsall*, 48 Minn 441, 444, 51 N.W. 382," *Beacon Hill Land Co. v. Bowen*, 33 R.I. 404, 82 A. 81, 84. And in *Schoch v. Birdsall* 48 Minn. 441, 51 N.W. 382 the court ratified a sale of property advertised as containing one eighth more land than it actually did. Considering whether such a variance was likely to influence bidders unfavorably, the court said: "Mr. Hilliard (1 *Hil.Mortg.* 143) suggests that a notice containing a description which embraces a much larger amount of land than contained in the mortgage would not be good, citing *Fenner v. Tucker*, 6 R.I. 551, in which the reason given by the court is that persons who might desire to purchase the quantity of land embraced in the mortgage might not want to buy the tract advertised to be sold, and therefore might not attend the sale. That could, however, not apply with any force here. But any change in the description that would render it uncertain, obscure, or misleading in respect to what the bidder would acquire by his purchase would undoubtedly be held to be material, and presumptively prejudicial. As a general rule, however, omissions or inaccuracies not calculated to mislead or to work injury are to be disregarded. *Stephenson v. January*, 49 Mo. 466."

It may also be noted in connection with this exception that where the advertisement is required, by contract, decree, or statute, to be published a given number of times or during a given period, and a mistake occurs in the earlier advertisements which is corrected in the later advertisements, the corrected advertisements must run for the full period or for the full number of insertions, if the variance is substantial. 41 *C.J.* 964.

In other words, the number of times which a defective advertisement was published cannot be tacked to the times on which the corrected advertisement was published in order to make up the number of times which the trustee was required by decree or otherwise to publish an advertisement of the sale, if the variance was likely to mislead or prejudice any one. *Id.*

Coming again to the facts, it is apparent from the record that neither the description of the mortgaged property contained in the mortgage itself, nor in the recorded plats, nor in the verbal advertisement, were in themselves sufficient to inform any one, who did not know the property well, of the area and location of that part of it described in the mortgage which was to be sold at the foreclosure sale, without an expensive, laborious and careful examination of the land and mortgage records of Baltimore City and a survey of the property itself. That information could be given most readily, intelligently and graphically by a plat supplementing the verbal advertisement.

The trustee was not selling all the property described in the mortgage, but only so much thereof as had not been released from the lien of the mortgage. It was desirable therefore to contrast on a plat the property described in the mortgage which had been released, with that which had not been released, that purchasers might know what was offered.

The trustee had such a plat prepared and published as a part of the advertisement on two occasions, once on August 13th, and once on August 22nd. There was some error in that plat, which was corrected,

and the corrected plat published as a part of the same advertisement on August 27th, 30th and September 6th, but the record fails to show what the error was. The only information as to it, if it may be so called, must be gathered from these extracts from the testimony: "It would indicate that there was more property than we had. The map did not show the blocking out of some parcels that were not for sale, and to which attention was called at the time of the sale. (The Court) The effect of that would be to tempt buyers and not to discourage them? (The Witness) Yes, it looked as if there was more property than what there was actually for sale. * * * This was the plat that was there. Here is the advertisement. What he is talking about is the little dots that go down from here (indicating). (The Court) You don't own that? (The Witness) No. (The Court) Did not attempt to sell it? (The Witness) No, sir, we did not own it at all. Here is the plat we had at the sale, may it please the Court. (Plat referred to was then offered in evidence, and marked by the reporter, Defendant's Exhibit B). (The Witness) I don't know where you got the plat. The plat was substantially correct, but this is that, and that is this, and it shows the little extension of Nottingham Road that you are talking about." In the absence of any identifying references to the plats to which the witness referred, such testimony means nothing, and is obviously insufficient to support a conclusion that the difference between the erroneous plat and the corrected plat was substantial or prejudicial.

On the advertised plat the released lots were shaded and the unreleased lots, which were to be sold, unshaded. A purchaser was thereby enabled to perceive instantly the location of the property to be offered. Except as to the location of a single lot, No. 17 in section 1, which appears on no plat, the copy of the plat published as a part of the advertisement seems to be simple, plain, accurate, and adequate. The appellant suggests that the advertisement attempts to subdivide section K with-

out any scale or notation of size and by description. But if there is any foundation for that criticism the record does not disclose it. The advertisement does offer section K, and excepts therefrom a small portion which is clearly shown on the plat, but it refers to no numbered lots or other divisions in the section. The trustee stated too that the plat published with the advertisement on August 13th and 22nd showed more property for sale than was to be offered. But he did not say how much more, no copy of that plat was in evidence, nor did the extent of the error appear from any other source. So that, in the absence of any showing to the contrary, it must be assumed that there was no substantial difference between that plat and the plat which is in the record, and which, with the verbal description in the advertisement, afforded adequate notice of the location and extent of the property to be sold.

The next objection offered by the appellant is that the property should first have been offered in lots, and the bids held, and then offered as an entirety. It is axiomatic that the trustee was bound to exercise the same degree of care, diligence and judgment in selling the property that a prudent man of ordinary business experience would exercise in selling his own property to the best advantage (*Webster v. Archer* 176 Md. 245, 4 A.2nd 434, 438), and that he was authorized to sell no more of the mortgaged property than was sufficient to pay the balance due on the mortgage, accrued interest, taxes and costs, *Id.* But it was stated in the case last cited that "whether a judicial sale of divisible lands as a whole rather than in parcels should be set aside depends upon the character and location of the land and the attendant circumstances, and whether the method of sale was prejudicial to the person objecting thereto."

In this case there is no showing of prejudice. The balance due under the mortgage was over $90,000 and the highest price offered at either sale was $18,000. The net advances made by the second mortgagee on account of interest payable on the first mortgage and for taxes

was $1605.38, indicating that in over six years the mortgagor had not been able to sell a sufficient number of lots to pay interest on the mortgages or taxes on the property. There was no evidence of any kind that a higher price would likely be realized at a resale, or that its fair market value was more than $18,000. On the contrary the admissions of counsel in the following colloquy indicates that any resale would be an idle experiment without promise of benefit to the mortgagor or the mortgagee: "(The Court) Were you or your clients there to bid on this property when it was sold? (Mr. Cover) I was present at the sale, your Honor. (The Court) Did you put in any bid? (Mr. Cover) I did not, sir. (The Court) Have you got any one that wants to buy it at more than $18,000? (Mr. Cover) I am not prepared to answer that. (The Court) Don't you think it a pertinent thing to find out as long as you are objecting to the ratification of the sale and not on behalf of any purchaser, but on behalf of the mortgagor? You might sell this property every four weeks from now to Doomsday and not get any more for it. (Mr. Cover) Our contention is Mr. Karr has not done anything that he did not do the last time. (The Court) Suppose Mr. Karr employed you to prepare the plat, have you any assurance it would have brought fifteen cents more or even as much? (Mr. Cover) No, sir. (The Court) Every time you advertise this property some one is losing money in the form of commissions, auctioneer's fees and Daily Record expenses. Mr. Cover) That is true. We don't want to be put in the position of forcing Mr. Karr to do anything except advertising the property as it should be advertised."

Moreover, apart from the absence of any showing of prejudice, it is apparent that it was wholly impracticable to offer the land in lots, because all of it was subject to the lien of the first mortgage, and at the trial of the exceptions to the first sale the trustee testified without contradiction that under the terms of the first mortgage no lot would be released from its lien except upon payment of $1200, and even if the holder of the second mortgage

was willing to sell the lots free of the lien of its mortgage, it could not be expected to put up $1200 on each of the lots to have it released from the lien of the first mortgage.

Finally, while the mortgaged property was described in the mortgage as separate lots, that was a mere paper description, and in fact it may be inferred from the evidence that the lots together constituted a physical undivided tract of land, for the evidence is at least more consistent with that premise than with any other.

Considering the nature of the property, and the state of the title, it cannot be said that the trustee failed to exercise the degree of skill, judgment and care implicit in the trust which he assumed, in offering the property as a whole instead of in lots, and that fact, together with the absence of any showing of prejudice, was sufficient to justify the trial court in overruling the exception, based on the ground that he should have offered the property by lots.

The objection that the terms of sale were improper is also without merit. The terms required a deposit of $1000, balance in cash upon the ratification of the sale. The first mortgage was in default, the second mortgagee was in need of cash to pay the interest due on that mortgage, the taxes on the property were in arrear, and the holder of the first mortgage was threatening to foreclose. The trustee was certainly under no duty to pay cash to protect its interests which were endangered by the mortgagor's default.

Finally it is suggested that the property was subject to certain beneficial restrictions which were not mentioned in the advertisement or announced at the sale. But since the record not only does not show what the restrictions were, but also fails to show that there were any restriction at all, that objection cannot be considered by this court.

Finding no error in the rulings of the court, the order from which this appeal was taken will be affirmed.

*Order affirmed, with costs.*