[No. A028692. First Dist., Div. Four. Mar. 23, 1987.]

TIZAR HANDY, Plaintiff and Appellant, v.
R. J. SHIELLS et al., Defendants and Respondents.

COUNSEL

Pano Stephens and Stephens & Williams for Plaintiff and Appellant.

Richard J. Henderson for Defendants and Respondents.

OPINION

ANDERSON, P. J.—Tizar Handy (appellant) brought an action to quiet title to real property, recover damages and cancel a grant deed purportedly executed by himself and his wife, Maryalice L. Handy (Maryalice), claiming his name had been forged. The named defendants were Maryalice, R. J. Shiells (R. J.), John S. Shiells (John), the Black Company (John's surety), James Randolph Adams (Adams), David Shumaker, doing business as Secured Properties (Shumaker), Richard Selzer, doing business as Selzer Realty (Selzer), and the Ukiah Coast Title Company. Various defendants cross-claimed among themselves for damages and/or indemnity; however, the disposition of those actions is not the subject of this appeal. In addition, Selzer was dismissed from the case before judgment.

## I.  FACTS

The facts determined by the trial court are as follows: Appellant and Maryalice were owners in joint tenancy of a residence located at 1753 Lockwood Drive in Ukiah, California (the house). The couple were in default on a secured promissory note in the amount of $9,754.51 and, therefore, the house was set for trustee's sale on the morning of October 3, 1979. On October 2, Shumaker and Adams approached Maryalice and proposed that she deed the property over to them or their nominee, who would then cure the default. Later, they would deed the house back in exchange for her executing a promissory note for the amount necessary to cure the default, interest thereon at 16 percent, rental payments of $300 per month and a $10,000 profit.

About one hour before the trustee's sale was to begin, Maryalice met with Shumaker and Adams and accepted their offer. However, since appellant was out of town and unavailable to be consulted, the three agreed that Maryalice would execute appellant's signature on the deed and Adams would verify it before a notary public. By previous arrangement with Shumaker, R. J. provided the money to prevent the foreclosure and was named as grantee

on the deed. Through error, his name was misspelled "Shields." At the time of delivery, R. J. was told of the forgery.

R. J. and his wife reconveyed the house to Maryalice in August 1981 subject to a $29,500 promissory note[1] bearing 16 percent interest. The deed named Maryalice "an unmarried woman" based on her representation that appellant had divorced her. In executing the deed R. J. and his wife signed their last name "Shields" believing that in light of the original misspelling, it was the proper way to convey title. Their son, John, notarized their misspelled signatures, but did so with no intent to deceive anyone. In a transaction initiated by Selzer, R. J. assigned the note on the house to him for $25,000. Maryalice made only one payment on the note and on January 12, 1984, the house was sold at a trustee sale to Selzer as trustee for George and Linda McClure (the McClures).

The trial court decreed that appellant held title to an undivided one-half interest in the house as a tenant in common with the McClures, "free and clear of liens satisfied by R. J. Shiells and any equitable lien in favor of any other party herein." It also entered judgment in favor of John and his surety on the complaint and all cross-complaints. Finally, all remaining defendants were ordered to pay appellant's attorney fees in the amount of $6,060.

## II. CONTENTIONS ON APPEAL

Appellant argues that since his name was forged by Maryalice on their original deed, the trial court erred in determining that the transfer of the house had the legal effect of severing the joint tenancy. He also argues that the relief and damages awarded him were inadequate, contending specifically that (1) the court was wrong in determining that neither Civil Code[2] sections 1695 through 1695.14 (regulating "equity purchasers" and home equity sales contracts) nor sections 2945 through 2945.8 (regulating "mortgage foreclosure consultants") applied to his cause of action; and (2) the evidence proved that John and his surety were liable to appellant for violation of notarial duties. We disagree and affirm the judgment in full.

### A. Effect of the Forged Deed

The trial court stated, "The deed on October 3, 1979, to defendant

---

[1]The amount of the note consisted of the intial payment to avoid foreclosure ($9,754.51), the removal of miscellaneous tax and judgment liens ($2,940.29), rent (23 months x $300 = $6,900) and the fee for the transaction ($9,905.21).

[2]All further statutory references are to the Civil Code.

R. J. Shiells constituted a valid and effective conveyance of the interest of Maryalice Handy and severance of the joint tenancy. The deed had no effect whatsoever upon the interest of [appellant] who remains to this date a tenant in common as to a one-half interest in that property." We have been unable to discover any California authority directly addressing the effect of forging one joint tenant's signature to a deed purporting to transfer title to the entire property. However, our review of analogous California cases and the holdings of sister states convinces us that the trial court's determination of this issue was correct.

There is no question that a forged document constitutes a nullity and as such, cannot provide the basis for a superior title as against the original grantor. (*Wutzke* v. *Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43 [198 Cal.Rptr. 418], and cases cited therein.) Yet, it is equally clear that one joint tenant without the approval of the other can transfer away his or her share of the property, leaving the remaining joint tenant a tenant in common with the grantee. (*Hammond* v. *McArthur* (1947) 30 Cal.2d 512, 514-515 [183 P.2d 1]; *Riddle* v. *Harmon* (1980) 102 Cal.App.3d 524, 527 [162 Cal.Rptr. 530, 7 A.L.R.4th 1261].) Perhaps more importantly, where one cotenant undertakes to convey the whole title to a specific piece of property, the conveyance is *not* void but only operates to transfer that individual's interest in the land. (*Emeric* v. *Alvarado* (1891) 90 Cal. 444, 456 [27 P. 356]; *Gonzales* v. *Gonzales* (1968) 267 Cal.App.2d 428, 434-435 [73 Cal.Rptr. 83].) Similarly, a deed executed by only some of the persons named as grantors *does* operate to convey the interests of those who actually sign it. (*Colton* v. *Seavey* (1863) 22 Cal. 496, 501 ; *Gonzales* v. *Gonzales, supra,* 267 Cal.App.2d at p. 434.) .

When faced with factual situations similar to the one in this case, courts of other states have opted to treat the fraudulent attempt at transferring both parties' interests as an event triggering a termination of the joint tenancy. In *Sadacca* v. *Monhart* (1984) 128 Ill.App.3d 250 [470 N.E.2d 589], a husband forged his wife's name to a deed on a condominium they held as joint tenants and sold it to a third party. The court of appeal let stand without comment the trial court's holding that the husband had severed the joint tenancy and had conveyed his interest to the purchaser, whereupon the wife and the purchaser became tenants in common.

In *Maskell* v. *Hill* (1947) 189 Md. 327 [55 A.2d 842], a married man and his mistress took title to a house in joint tenancy using assumed names. Following their separation, the man forged the mistress's assumed name to a deed conveying full title to himself under his real name. He then transferred the property to a "straw man" who deeded it back to him and his wife as

tenants by the entirety. The Court of Appeal affirmed an order overruling a demurrer to the mistress's complaint for damages and to set aside the fraudulent deeds. In doing so, it commented that if the first deed was forged as the mistress alleged, the subsequent deeds to the "straw man" and back to the husband and his wife affected only the husband's half interest and made him and his wife (to the extent of that half interest) tenants in common with the mistress.

We agree with the reasoning of these authorities and hold that the trial court was correct in finding appellant entitled to an undivided one-half interest in the home as tenant in common with the McClures. Maryalice's forgery of appellant's signature did nothing to affect his title to the house; however, the deed thus executed brought about a valid transfer of *her* interest. All subsequent conveyances affected only that one-half share in the property. The McClures took title innocent of any wrongdoing. They are therefore entitled to the ownership rights which legally passed to them.

## B. *Applicability of the Foreclosure Protection Laws*

Sections 1695 through 1695.14 were enacted to protect homeowners facing foreclosure from "equity purchasers" who, through oppressive methods, might induce them to sell their homes for a small fraction of their fair market value. (§ 1695.) It mandates (in pertinent part) that before any instrument for conveyance of a residence in foreclosure is executed, the buyer must provide the seller with a contract setting forth conspicuously all the terms of the sale and informing the seller that he or she has the right to cancel the sale within five business days or until 8 a.m. on the day scheduled for the sale of the property. (§§ 1695.2-1695.5). The legislation also prohibits the equity purchaser from taking title to the residence in any way during this "cooling off" period, paying the seller any consideration, making untrue or misleading statements about the value of the property or the terms of the sale and taking unconscionable advantage of the property owner in foreclosure. (§§ 1695.6, 1695.13.)

Sections 2945 through 2945.8 address the same concerns but apply to "foreclosure consultants," persons who, for consideration, offer to perform services calculated to save the owner's residence from foreclosure. (§§ 2945, 2945.1.) Again, conspicuous contract terms and a cooling-off period (three days) are called for. (§§ 2945.2, 2945.3.) The consultant is prohibited from collecting any fees before he has performed all services promised, charging more than 10 percent on any sum loaned to the property owner, taking any liens on property or wage assignments to secure payment for his services and acquiring an interest in the residence in foreclosure. (§ 2945.4.)

Both sets of statutes provide that the property owner may bring a private cause of action for any violation of their provisions. (§§ 1695.7, 2945.6.) Both took effect on January 1, 1980 (Stats. 1979, ch. 1029, p. 3536; Cal. Const., art. IV, § 8.), about three months after Maryalice delivered the deed to R. J.

The trial court made note of the problem that the sale of the house took place before the effective date of the statutes, but determined that they were inapplicable to appellant's case principally because *he had no involvement* with the transactions in question. We fully agree with this conclusion. Only Maryalice dealt with the defendants in this case; appellant agreed to nothing, signed nothing and transferred nothing. Maryalice was named only as a defendant—she was never joined as a plaintiff. Therefore, appellant cannot benefit from statutes aimed at protecting owners of homes in foreclosure who actually *deal* with either an equity purchaser or a foreclosure consultant.

### C.   *John's Liability as a Notary*

Appellant points to a few, selected excerpts from the record to maintain, "There is no basis in fact or law on which John S. Shiells could be permitted to escape liability to plaintiff as a participant in the forgery scheme . . . ." However, as John points out, there is a good deal of evidence which would support findings that he was innocent of any fraud; that he prepared the deed naming Maryalice "an unmarried woman" because he honestly believed her to be so; that he notarized his mother and father's names as grantors knowing them to be misspelled only because he thought it was the proper procedure where the grantee's name had been misspelled on a previous conveyance; and with reference to the latter act, that no one was misled or deceived thereby. Appellant's contention that as a matter of law the evidence establishes facts contrary to those determined by the trial court is the equivalent of arguing there is no substantial evidence to support those determinations. (*Wickham* v. *Southland Corp.* (1985) 168 Cal.App.3d 49, 54 [213 Cal.Rptr. 825].) That argument is *waived* when the appellant points only to evidence supporting his version of the facts and fails to even mention that supporting the judgment. (*Id.,* at pp. 54-55.)

### D.   *Adequacy of Damages*

As the trial court remarked, appellant was not entirely "sitting out" the events which led to the near loss of his home. He was the one who entrusted Maryalice with their finances, and it was her inability to carry out

this responsibility which brought them to the brink of foreclosure. Had none of the events recounted in this trial taken place, the house would have been sold from under them on October 3, 1979. As the result of the judgment, over $12,000 in liens were removed, appellant remained in possession for more than four years without having to make any payments and he was left with exactly what he had before: an undivided one-half interest in the house. Under these circumstances we cannot say as a matter of law that the damages awarded were inadequate.

The judgment is affirmed

Poché, J., and Channell, J., concurred.