15 A.3d 282

Carole M. FAGNANI, et al.

v.

Jeffrey B. FISHER, et al., Substitute Trustees.

No. 40, Sept. Term, 2010.

Court of Appeals of Maryland.

March 18, 2011.

372

374

376

Walter W. Green (Law Office of Walter W. Green, College Park, MD; Carlton M. Green of Green & Steelman, College Park, MD), on brief, for petitioners.

Jeffrey B. Fisher (Martin S. Goldberg and Scott R. Robinson of the Fisher Law Group, PLLC, Upper Marlboro, MD), on brief, for respondent.

Argued before BELL, C.J., BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

GREENE, J.

Petitioners Carole M. Fagnani and Ricardo L. Fagnani filed, in the Circuit Court for Montgomery County, exceptions to a foreclosure sale conducted by Respondents, Jeffrey B. Fisher, Martin S. Goldberg, Ibironke Sobande, Carletta M. Grier and Virginia S. Inzer, Substitute Trustees. At the time of the foreclosure sale, Respondent Ronald Fagnani held a concurrent interest, as tenant in common with Petitioners, in the property sold at auction. In addition, Ronald acquired the promissory note for a loan made to Carole, which loan was secured by a deed of trust on the property. After Carole defaulted on the loan, Ronald appointed the trustees mentioned above to sell the property. The trustees advertised the property for sale as an undivided one half interest, and sold the property on June 2, 2008 at a public sale. Following the Circuit Court's proposed ratification of the foreclosure sale, Petitioners filed exceptions challenging the trustees' ability to foreclose on only Carole and Ricardo's half interest in the property. The exceptions were overruled, and the court denied Petitioners' post-ratification motions to alter or amend or for a new trial.

Carole and Ricardo filed a timely appeal to the Court of Special Appeals. That court affirmed the judgment of the Circuit Court, ratifying the foreclosure sale, and holding that the foreclosure of an undivided one half interest in the property was proper. *Fagnani v. Fisher*, 190 Md.App. 463, 474, 988

A.2d 1134, 1140 (2010). The court reasoned that an interest held as a tenancy in common is freely devisable, and therefore the separate tenancies could be foreclosed upon separately. *Id.* The court also held that the advertisement distributed by the trustees was proper, and the $83,800 paid at the foreclosure sale was not "grossly inadequate." *Fagnani,* 190 Md. App. at 475, 988 A.2d at 1141. Subsequently, we granted the Petition for Writ of Certiorari, *Fagnani v. Fisher,* 415 Md. 38, 997 A.2d 789 (2010), which presented four questions for our review:

> A. As a matter of first impression, are the Substitute Trustees authorized to foreclose less than the entirety of the Property pledged as security under the terms of a uniform Deed of Trust secured by a single family residence on one indivisible lot which is incapable of partition or subdivision as a matter of law?
>
> B. As a matter of first impression, is the power of sale provision in a uniform Deed of Trust subject to strict construction?
>
> C. What authority do the Substitute Trustees have under the power of sale provision in a uniform Deed of Trust where the Substitute Trustees claim that one co-tenant's signature on the Deed of Trust is forged?
>
> D. Did the lower courts fail to properly apply the strict scrutiny standard to the conduct of the foreclosure sale?

We shall affirm the judgment of the Court of Special Appeals, and we shall hold that, under the circumstances, the foreclosure sale of an undivided one half interest in the property was proper.

## I. FACTS AND PROCEDURAL BACKGROUND

We adopt the following facts from the Court of Special Appeals's opinion filed in this case:

> From 1982 until her death in 1985, Pauline W. Fagnani jointly owned a house in Silver Spring ("the Property") with her two sons, Ricardo and Ronald Fagnani. Mrs. Fagnani left her interest in the Property to her sons, with the result

that each then held a one-half interest as tenants in common. On February 13, 2003, the brothers retitled the Property to convert Ricardo's half-interest to a tenancy by the entireties with his wife, Carole Fagnani.

On November 10, 2003, Carole borrowed $85,000 from American Residential Mortgage in a loan secured by a deed of trust for the property. Only Carole entered into the note, which Ricardo signed for her as "her attorney in fact." The note incorporates the default provisions set forth in the deed of trust.

The deed of trust, recorded in Montgomery County, defines "Borrower" as "Carole Fagnani, a married woman," and the Property as "located in the County of Montgomery ... [and] recorded among the land records of Prince George's County...." Ricardo again signed for Carole "as her attorney in fact." Signatures also appear over the names of Ricardo and Ronald, as "borrowers." All three signatures were notarized. The signatories covenanted that "Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the property and that the Property is unencumbered, except for encumbrances of record." Both documents give the lender the right to disapprove, (or approve), the transfer of "any legal or beneficial interest in the [P]roperty...." The deed of trust provides that "Lender or its designee may purchase the [P]roperty at any sale." The record contains Ronald's allegations in a verified complaint for declaratory judgment in another action that his signature on the note was forged.[1] The record does not reflect the outcome of that litigation; [Ronald's] counsel stated that it was settled. The record also does not evidence that the original lender made the loan with knowledge of any fraud. In any event, the Note was assigned to Ronald.

Carole defaulted on the loan after not paying the monthly installment due on January 1, 2006. On February 16, 2008,

---

1. Ronald filed a lawsuit for declaratory judgment in the Circuit Court for Montgomery County on June 22, 2006.

Ronald appointed the substitute trustees ("trustees"), who are [Respondents] here. On February 29, 2008, the trustees initiated foreclosure proceedings.... [O]n May 16, 23, and 30, 2008, the trustees advertised a public auction for the Property in the Washington Times. The advertisement bears a bold-face caption reading,

**Foreclosure sale**

VALUABLE IMPROVED DWELLING

2617 Blue Ridge Avenue

(Only as to Undivided 1/2 Interest of Ricardo and Carole Fagnani)

Silver Spring, MD 20902

The advertisement further stated that the sale would be conducted "in enforcement of a Security Instrument granted by Carole M. Fagnani and Ricardo L. Fagnani aka Rick Fagnani and recorded among the Land Records of Montgomery County...." The Property was described as:

All that property described in said Security Instrument, being in the 13 Election District of Montgomery County, Maryland, and being improved by a dwelling bearing the street address of 2617 Blue Ridge Avenue (Only as to Undivided 1/2 interest of Ricardo and Carole Fagnani), Silver Spring, Maryland 20902. Subject to all covenants, restrictions and easements of record, if any.

The auction was conducted on June 2, 2008. Sharie Thompson, acting as agent for Ronald, submitted the only bid, and the Property was sold to her for $83,800. One of the trustees filed a report of the sale with the circuit court on that day. In that report, the trustee attested that "the [P]roperty was fairly sold and brought a fair price." The record also contains an illegibly-signed auctioneer's certification attesting that Thompson "was the high bidder and that the sale was fairly made"; a Montgomery County document reflecting the assessment of the Property at $327,730 for property tax purposes; and Ricardo's assertions in an affidavit that "the market value of the [P]roperty

is valued near ... $400,000," and "[t]he Exceptants['] interest ... is worth nearly ... $200,000...."

On June 18, 2008, the court issued a notice of proposed ratification and confirmation of the sale. [Carole and Ricardo] filed exceptions and requested a hearing, which the court set for August 27, 2008. The trustees responded to the exceptions on August 21, 2008, and the parties appeared for the hearing on August 27. The court preliminarily denied [Petitioners'] request for a continuance in which to address the trustees' response to the exceptions. After hearing the parties' argument on the fairness of the sale of only a 50% interest in the Property and the effect of the alleged forgery on that question, the court ruled:

> It appears in this case the Fagnanis did, in fact, sign the deed of trust, then default, and it was sold by the substitute trustees. The price received of $83,800 is not grossly inadequate. It was properly advertised as a one half interest.
>
> It is a rather strange situation, but the only alternative the trustees had when it was in default is to protect the loan and to foreclose on the property and to foreclose against the people that signed the deed of trust.
>
> I will deny the exception to the sale and enter final ratification.

[Carole and Ricardo] filed a motion to alter or amend or for a new trial, which the court denied.

*Fagnani v. Fisher*, 190 Md.App. at 467–70, 988 A.2d at 1136–38.

## II. DISCUSSION

Petitioners contended at the exceptions hearing and before this Court that the foreclosure sale was not conducted properly. According to Carole and Ricardo, the Respondents had no authority under the deed of trust to sell less than 100% of the property. Petitioners also assert that there has been no factual determination that Ronald's signature on the deed of trust was forged. Finally, Petitioners assert that because the

purchaser at the foreclosure sale was also the mortgagee, the court must review the sale with heightened scrutiny, and set aside the sale under the circumstances of this case.

Conversely, Respondents maintain that the sale was properly ratified because Petitioners "failed to provide any evidence whatsover to support their exceptions." Respondents point out that, although the courts are bound to apply a heightened level of scrutiny when the note holder is the successful bidder at a foreclosure sale, the burden is nonetheless on the exceptant to prove that the sale was unfair or improperly conducted. Finally, Respondents argue that the trustees acted within their discretion in foreclosing on only Carole and Ricardo's interest.

## A

A tenancy in common is a type of concurrent estate in which multiple parties have interest in a single property. A tenant in common holds an "undivided share in the whole estate, [and] an equal right to possess, use, and enjoy the property." *Downing v. Downing*, 326 Md. 468, 474, 606 A.2d 208, 211 (1992). In the present case, it is undisputed that Carole and Ricardo held an undivided one half interest in the subject property as tenants by the entirety and that Ronald held an undivided one half interest in the same property as a tenant in common. It is also undisputed that Carole defaulted on the note secured by a deed of trust on the property and that Ronald obtained the note from the original lender.

One who borrows money from a lender/creditor or mortgagee is designated as a borrower/debtor or mortgagor. In order to ensure repayment, a lender or creditor may require the debtor to convey property to the creditor to be held as collateral to secure the debt. The conveyance ensures that the creditor will either be repaid the loan or retain ownership of the collateral. *See Simard v. White*, 383 Md. 257, 270–271, 859 A.2d 168, 176 (2004). Where the legal relationship exists between only the debtor and the lender, it is evidenced by a mortgage document; however, where the

debtor conveys the property to a third party trustee rather than the lender, it is evidenced by a deed of trust. 383 Md. at 281, 859 A.2d at 182 (quoting Ricard M. Venable, *The Law of Real Property* 179 (1892)). A deed of trust is a "security interest device [that] transfers the legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary." *Springhill Lake Investors Ltd. P'ship v. Prince George's County,* 114 Md.App. 420, 428, 690 A.2d 535, 539, *cert. denied,* 346 Md. 240, 695 A.2d 1229 (1997). The conveyance transfers the estate of the debtor to the trustee, giving the trustee legal title to the property. The debtor retains an "equity of redemption" or the right "to reassert complete [ ] ownership of the land, upon payment of debt and any other charges rightly assessed under the terms of the lien instrument." 383 Md. at 272 n. 12, 859 A.2d at 177 n. 12 (internal citations omitted). The conveyance can then be "defeated on the performance of a condition subsequent (the payment of the money)." *Simard,* 383 Md. at 271, 859 A.2d at 176 (quoting Venable, 177); *see also Williams v. Safe Deposit & Trust Co.,* 167 Md. 499, 504, 175 A. 331, 333 (1934) ("[A] mortgage conveys the whole legal estate to the mortgagee, subject, generally, to the condition subsequent that, upon due payment of the mortgage debt and a performance of all the covenants by the mortgagor, the mortgage deed is avoided.").

Not unlike a mortgage, the deed of trust may contain a power of sale. In a deed of trust, the power of sale enables the trustee to sell the property upon the debtor's default, in order to reimburse the lender for the debt. 383 Md. at 281, 859 A.2d at 182. Pursuant to the power of sale provision, a trustee may institute a foreclosure action, in which the trustee may "order and direct that the mortgaged premises, or so much thereof as may be necessary to discharge the money due and costs, be sold for ready money." 383 Md. at 276–77, 859 A.2d at 180–81 (internal citations omitted).

A foreclosure sale is governed by Md.Code (1974, 1996 Repl.Vol.1999 Supp.), § 7–105 of the Real Property Article, and the Maryland Rules. Maryland Rule 14–305(d) pro-

vides that if a party perceives an irregularity in the foreclo-
sure sale, it may file exceptions to the sale of the property.[2]
The ratification of a foreclosure sale is, however, presumed to
be valid. *Webster v. Archer,* 176 Md. 245, 253, 4 A.2d 434,
437–438 (1939). It is settled law that, "there is a presumption
that the sale was fairly made, and that the antecedent pro-
ceedings, if regular on the face of the record, were adequate
and proper, and the burden is upon one attacking the sale to
prove the contrary." *Id.* The party excepting to the sale bears
the burden of showing that the sale was invalid, and must
show that any claimed errors caused prejudice. *Ten Hills Co.
v. Ten Hills Corp.,* 176 Md. 444, 449, 5 A.2d 830, 832 (1939).
Additionally, "[i]n reviewing a court's ratification of a foreclo-
sure sale, we will disturb the circuit court's findings of fact
only when they are clearly erroneous." *Fagnani,* 190 Md.
App. at 470, 988 A.2d at 1138 (relying on *Jones v. Rosenberg,*
178 Md.App. 54, 68–69, 940 A.2d 1109 (2008)). Further, "if a
mortgagee or his assignee complies with the terms of the
power of sale in the mortgage, and conducts the foreclosure
sale properly, the court will not set aside the sale merely
because it brings loss and hardship upon the mortgagor."
*Bachrach v. Washington United Cooperative, Inc.,* 181 Md.
315, 324, 29 A.2d 822, 827 (1943).

 When a foreclosure sale is held pursuant to the
terms in a deed of trust, trustees must adhere to certain
standards in carrying out their duties. Trustees are under a

**2.** Rule 14–305 governs the "Procedure following sale" and states in
pertinent part: (d) Exceptions to sale.

(1) How taken. A party ... may file exceptions to the sale. Excep-
tions shall be in writing, shall set forth the alleged irregularity with
particularity, and shall be filed within 30 days after the date of a notice
issued pursuant to section (c) of this Rule or the filing of the report of
sale if no notice is issued. Any matter not specifically set forth in the
exceptions is waived unless the court finds that justice requires other-
wise.

(2) Ruling on exceptions; hearing. The court shall determine wheth-
er to hold a hearing on the exceptions but it may not set aside a sale
without a hearing. The court shall hold a hearing if a hearing is
requested and the exceptions or any response clearly show a need to
take evidence.

duty "to exercise the same degree of prudence, care, diligence and judgment, that a man of ordinary business judgment and experience would exercise, in selling his own property." *Webster*, 176 Md. at 254, 4 A.2d at 438. In performing their obligations, trustees have "discretion to outline the manner and terms of the sale, provided their actions are consistent with the deed of trust and the goal of securing the best obtainable price." *Simard*, 383 Md. at 312, 859 A.2d at 200 (2004) (relying on *Waters v. Prettyman*, 165 Md. 70, 75, 166 A. 431, 433 (1933)). Further,

> Unless the precise method of sale is prescribed by contract or decree, some discretion is necessarily granted to the trustee, attorney or assignee, making the sale, as to the manner in which the property will be offered. That discretion will naturally be affected by the character and location of the property and other circumstances peculiar to the case, so that it is impossible to lay down a hard and fast rule . . .

*Webster*, 176 Md. at 254–55, 4 A.2d at 438. Finally, trustees are obligated "to sell no more of the property than is necessary to pay the mortgage debt, accrued interest, and costs of foreclosure." *Webster*, 176 Md. at 254, 4 A.2d at 438.

## B

Respondents allege that Ronald's signature on the deed of trust was forged. Evidence was entered at the exceptions hearing to show that the purpose of the earlier declaratory judgment action instituted by Ronald was to establish that, due to the alleged forgery, the deed of trust did not encumber Ronald's interest in the property. That action, however, resulted in a settlement in which Ronald acquired the original promissory note. There has been no judicial declaration on the merits of Ronald's claim of forgery.

Nonetheless, Respondents maintain in this Court that the deed of trust did not encumber Ronald's interest in the property because Ronald's signature was forged. At the exceptions hearing, counsel for the trustees proffered that

Ronald did not sign the deed of trust. According to the proffer, Ronald would have testified that he neither ratified nor affirmed the note in any way, and that he only learned of the loan transaction because Carole and Ricardo were in default on the payments. Respondents assert that as a result of the forgery, the deed of trust could have encumbered only Carole and Ricardo's undivided one half interest. Further, Respondents contend that their attorney's proffer at the exceptions hearing regarding the forgery was unrebutted, and that the failure to rebut the assertion established their position that the deed of trust is void as to Ronald's undivided half interest in the property. Hence, the trustees argue that Carole and Ricardo's undivided one half interest in the property is all that is or was subject to the foreclosure sale.

At the exceptions hearing, Petitioners challenged the allegation of forgery. They argued that the settlement did not prove that there was a forgery and therefore Ronald cannot rely on this unproven assertion in arguing that only Carole and Ricardo's interest was encumbered by the note. Further, Petitioners contend that even if there was a forgery, the sale was nonetheless invalid. They conclude that if there was a forgery, it would render the entire deed of trust invalid and the trustees would thereby not have the authority to foreclose on *any* of the property. This, they maintain, is because the power of sale, which authorizes the trustees to foreclose on the property, would be rendered void by the forgery, thus nullifying the trustees legal ability to initiate the sale. According to Petitioners, the sale is either invalid because the trustees could not foreclose on only half of the property, or assuming there was a forgery, the forgery rendered the entire deed of trust void.

The hearing judge did not specifically respond to the parties' contentions. He did not explicitly determine which parties signed the deed of trust, or whether Ronald's signature on the deed of trust was forged. Rather, the court stated that, "[i]t appears in this case the Fagnanis did, in fact sign the deed of trust" and the trustees properly foreclosed on "the people that signed the deed of trust." The judge did not

indicate if he was referring to all of the parties collectively as the "Fagnanis" or just the married couple. Likewise, the Court of Special Appeals, in reviewing the case, saw no need to "reach the parties' contentions concerning whether Ronald's signature was forged, whether the original lender took subject to such a forgery, and, ultimately, whether the deed of trust conveyed Ronald's interest, because the result is the same either way." *Fagnani*, 190 Md.App. at 474, 988 A.2d at 1140.

In evaluating the competing claims regarding the forgery, we shall approach the issue similarly, holding that the result is the same whether or not there was a forgery. Assume first that Ronald's signature on the deed of trust is a forgery as a matter of law, based upon the unrebutted proffer of counsel for the Respondents. Hence, Carole and Ricardo could only convey their own interest because Ronald did not authorize the conveyance of his interest in the property. *See Harding v. Ja Laur Corp.*, 20 Md.App. 209, 214, 315 A.2d 132, 135–36 (1974) ("We glean from the *Maskell v. Hill* decision [189 Md. 327, 55 A.2d 842 (1947)] that the common law rule that a forger can pass no better title than he has is in full force and effect in this State. A forger, having no title can pass none to his vendee.") (internal citations omitted); *see also* 20 Am. Jur.2d Cotenancy and Joint Ownership § 102 ("[A] mortgage or trust deed executed by less than all of the cotenants and purporting to bind the entire estate is a mere nullity insofar as the nonassenting cotenants are concerned.").[3] The note was

---

3. We have not previously had occasion to determine specifically the effect of an alleged forgery on the validity of a deed of trust, when only one cotenant's signature is alleged to be forged. Relying on our decision in *Maskell*, however, the California Court of Appeals for the First District determined that when one cotenant seeks to convey an entire property but the signature of the other cotenant is forged, the deed of trust is a nullity as to the forged interest only. *Handy v. Shiells*, 190 Cal.App.3d 512, 517–18, 235 Cal.Rptr. 543 (Cal.App. 1st Dist.1987). The Court stated,

There is no question that a forged document constitutes a nullity ... Yet, it is equally clear that one joint tenant without the approval of the other can transfer away his or her share of the property, leaving the remaining joint tenant a tenant in common with the grantee. Perhaps more importantly, where one cotenant undertakes to convey

thereby only secured by Carole and Ricardo's undivided one half interest. On this basis, after Carole defaulted on the note, Ronald acquired the note secured by the deed of trust and the right to institute foreclosure proceedings to extinguish Carole and Ricardo's undivided one half interest in the property. Therefore, assuming there was a forgery, the trustees acted properly in selling Carole and Ricardo's undivided one half interest in the property, because their interest was the only interest that was subject to the deed of trust.

Alternatively, if we assume that the evidence presented at the exceptions hearing did not establish a forgery of Ronald's signature on the deed of trust, the signing of the deed of trust by all the concurrent interest holders resulted in the conveyance of the entire property in trust, subject to the concurrent interests of Carole, Ricardo, and Ronald. Even if the entire property were encumbered, we hold that the trustees acted within their authority in selling only the partial interest of Carole and Ricardo at the foreclosure sale. We shall explain this alternate holding more fully *infra*, in section C.

## C

As a matter of law, a trustee may foreclose on an undivided one half interest, rather than the entire property. *See Webster*, 176 Md. at 254–55, 4 A.2d at 438 (discussing the scope of trustee authority and discretion in a foreclosure action).

Again, it is undisputed that Carole defaulted on the promissory note. After her default, Ronald acquired the note, by assignment from the original lender, ultimately obtaining the lender's rights and interest in the note. Accordingly, as a matter of law, when Ronald acquired the note, he also ob-

---

the whole title to a specific piece of property, the conveyance is *not* void but only operates to transfer that individual's interest in the land. Similarly, a deed executed by only some of the persons named as grantors *does* operate to convey the interests of those who actually sign it.

*Handy*, 190 Cal.App.3d at 517, 235 Cal.Rptr. 543 (internal citations omitted).

tained the status of mortgagee or secured party with respect to the lien on the subject property. Ronald also became the beneficiary of the deed of trust, which incorporated the note. *See Springhill Lake Investors,* 114 Md.App. at 428, 690 A.2d at 539 (stating that a deed of trust "transfers legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary."). A deed of trust securing a negotiable note can be transferred freely. *Manor Coal Co. v. Beckman,* 151 Md. 102, 115, 133 A. 893, 898 (1926) (quoting Jones on Mortgages, par. 62) ("A deed of trust to secure a debt is in legal effect a mortgage. It is a conveyance made to a person other than the creditor, conditioned to be void if the debt be paid at a certain time."). In other words, the title conveyed by the deed of trust is also defeasible, i.e. capable of being made void. Black's Law Dictionary 449 (8th ed. 2004) (Defeasible: "*adj.* (Of an act, right, agreement, or position) capable of being annulled or avoided").

Turning to the case *sub judice,* we reiterate the interests each party held at the time of the foreclosure. Carole and Ricardo were tenants in common with Ronald. Assuming *arguendo* that there was no forgery, Carole entered into the note, secured by the deed of trust, which was signed by all three parties. The deed of trust conveyed the entirety of the property to the trustees, who held the property for the benefit of the original lender as beneficiary. As a result of the settlement action between the parties, Ronald acquired the note by assignment from the original lender, and the lender was released. As note holder and beneficiary of the deed of trust, Ronald had the authority to act consistent with the terms of the note and the deed of trust, which secured the note. The note incorporated the power of sale provision in the deed of trust, which allowed the appointed trustees to foreclose on the property in the event of a default by the debtor.

Pursuant to the power of sale contained in the deed of trust, the trustees instituted foreclosure proceedings to sell the property. The deed of trust did not specify a precise method of sale; rather, the trustees, as a matter of law, had the discretion to determine the manner and terms of the sale.

Accordingly, it was within the sound discretion of the trustees to evaluate the circumstances peculiar to this case, including the allegation of forgery, the fact that the debt was apparently owed by only one of the cotenants, the amount of the debt, and the nature of the property as a cotenancy. The trustees decided to sell only as much of the property as was necessary to satisfy the debt, and advertised only the one half interest of Carole and Ricardo for sale. As stated above, when the debt is repaid through a foreclosure sale, the debt instrument becomes void between the original parties and legal title is then transferred to the purchaser. *Manor Coal Company,* 151 Md. at 115, 133 A. at 898. Therefore when Ronald purchased the property secured by the deed of trust pursuant to the sale, he acquired "clear title to the property mortgaged to secure the debt." *Simard v. White,* 383 Md. 257, 272 n. 12, 859 A.2d 168, 177 n. 12 (2004).

Prior to the sale, the trustees held legal title to the entirety of the property, subject to Carole, Ricardo, and Ronald's concurrent interests. The trustees' acquisition did not affect the cotenancy ownership of the property. As a matter of law, after the sale, legal title held by the trustees was conveyed to Ronald, as the purchaser at the foreclosure sale, and the deed of trust was voided. At that point, Ronald received legal title to the entire property *subject to* his own interest. This is because, as stated above, the trustees' acquisition of legal title did not alter the underlying nature of the property, which was held as a concurrent estate. For clarification, if someone else had purchased the property at the foreclosure sale, he or she would not have been subject to the deed of trust, because the deed of trust would have been extinguished by the sale. The purchaser, however, would have acquired a concurrent interest with Ronald, because Ronald still retained his undivided one half interest and the sale would have eliminated the concurrent interests of Carole and Ricardo. Instead, because Ronald was the purchaser, and his interest was the only remaining interest after the sale, Ronald was left with absolute ownership of the property. Under the circumstances, the trustees

did not abuse their discretion in conducting the sale and therefore the sale was properly ratified.

## D

Although we have determined that the trustees acted within their discretion in foreclosing on only Carole and Ricardo's one half interest, we must still review the procedural aspects of the sale. As stated above, an exceptant may challenge the procedure used in a foreclosure sale pursuant to Md. Rule 14–305. Rule 14–305 states that all "[e]xceptions shall be in writing [and] shall set forth the alleged irregularity with particularity." Rule 14–305(d)(1). Further, a court shall ratify the sale if the court is satisfied that the sale was "fairly and properly made." Rule 14–305(e). Examples of recognized procedural irregularities include challenges to the advertisement and the price obtained for the property. *See Greenbriar v. Brooks,* 387 Md. 683, 741, 878 A.2d 528, 563 (2005).

When reviewing the adequacy of an advertisement of a sale, we have delineated two factors courts should consider:

> (1) that the advertisement is sufficient if it describes the property so that it can be located by the exercise of ordinary intelligence and so that more detailed information concerning it could be obtained, if desired ... (2) that failure to mention or fully describe the nature and extent of improvements ... will not vitiate the sale unless the exceptant meets his burden of overcoming the presumption of validity of a judicial sale by showing that the omission was prejudicial to the sale of the property at a fair and adequate sum, and that a resale would be likely to produce a greater amount.

*Brooks v. Bast,* 242 Md. 350, 357, 219 A.2d 84, 88 (1966); *see also Ten Hills Co. v. Ten Hills Corp.,* 176 Md. 444, 449, 5 A.2d 830, 832 (1939) (emphasizing the requirement that the exceptant must show prejudice and stating, "courts will not be inclined to interfere with a sale fairly made because of trivial discrepancies or inconsequential errors."). The purpose of

advertising the foreclosure sale is to "apprise the mortgagor of the proposed sale ... and to give the public such notice thereof that persons who might be interested in purchasing the property as that to be sold might know of the sale and have an opportunity of bidding on the property." *Ten Hills,* 176 Md. at 449, 5 A.2d at 832. The standard for evaluating the substance of the advertisement is whether "a person of ordinary intelligence may understand [ ] the identity of the property to be sold ... interpreted in the light of practical common sense." *Ten Hills,* 176 Md. at 450–51, 5 A.2d at 833.

In the present case, the advertisement was sufficient because it adequately described the premises. The advertisement clearly identified what property and what interest was being sold, and put the public on notice of the sale. Petitioners claim that the term "undivided one half interest" is "confusing and misleading." In fact, this description is quite specific and puts any prospective buyer on notice that the sale is for an interest in a concurrently owned estate. Petitioners failed to meet their burden of overcoming the presumption of validity because they did not prove that the advertisement was prejudicial to the sale of the property. There is no indication or evidence that the trustees failed to act with ordinary business judgment or proper prudence, care and diligence. They acted in accordance with the terms of the note and deed of trust as well as the statutory requirements.[4]

Petitioners next challenge the adequacy of the price obtained in the foreclosure sale, claiming that the price was "grossly inadequate." Petitioners base this argument on their previous claim that the trustees were not authorized to sell an undivided half interest in the property. Petitioners argue that selling only a partial interest in the property rather than the undivided whole was "blatantly unfair and unreasonable."

---

4. Md. Rule 14–210(a) (effective May 1, 2009, formerly 14–206(b)) requires that an individual "authorized to make the sale shall publish notice of the time, place, and terms of the sale in a newspaper of general circulation in the county in which the action is pending. Notice of the sale of an interest in real property shall be published at least once a week for three successive weeks."

Because we have already held that the trustees did not breach any duty in foreclosing on only Carole and Ricardo's partial interest, we shall focus on the adequacy of the price attained for the interest actually sold, in view of Carole and Ricardo's allegation that the sale price was inadequate.

In *Pizza v. Walter*, 345 Md. 664, 694 A.2d 93 (1997), we extensively discussed the proper standard for reviewing the adequacy of a price obtained in a foreclosure sale. We stated:

> The law is well settled that inadequacy of price alone, unless it indicates fraud, unfairness or some misconduct or mistake for which the purchaser should be held responsible, ordinarily is not a sufficient ground to set aside a sale. Although inadequate price alone does not ordinarily necessitate setting aside a sale, when inadequate price is coupled with other evidence of irregularity the sale may be set aside, even if the price might not shock the conscience of the court. Inadequacy of price is a strong auxiliary argument in connection with circumstances which cast doubt or suspicion upon the correctness of the sale. In this regard, this Court observed in *Waters v. Prettyman*, 165 Md. 70, 74, 166 A. 431, 432 (1933):
>
>> It is settled law of this state that inadequacy of price, standing alone, is no ground for the refusal to ratify a mortgage sale, unless the price be so grossly inadequate as to, in and by itself, indicate mistake, fraud, or unfairness in the conduct of the sale. It is equally well settled that, if inadequacy of price be coupled with any irregular or faulty advertisement or conduct in the making or manner of sale, such as indicates that the property has not been advertised or offered for sale, or sold, under conditions and circumstances that would most likely produce the largest revenue, the court will set it aside and order a resale. The test is: Was the property sold under such conditions and terms as to advertisement and otherwise, as a prudent and careful man would employ, seeking to obtain the best price for his own property.

*Pizza,* 345 Md. at 677–78, 694 A.2d at 99 (internal citations and quotations omitted).

As indicated in *Ten Hills* and *Pizza,* alleged fraud in the sale may be grounds to challenge the adequacy of the sale price. Specifically, if "fraud and deceit [are employed] to suppress bidding at the sale," this may be grounds for setting aside a foreclosure sale. *Heighe v. Evans,* 164 Md. 259, 268, 164 A. 671, 675 (1933). In *Heighe,* the exceptants alleged that the mortgagee was guilty of bad faith because she was an active bidder at the foreclosure sale. *Id.* We rejected that argument, and stated it was not shown that the mortgagee "attempted to prevent others from bidding, or that the property sold for less than it should have brought" and therefore her actions did not result in an inadequacy of price sufficient to vitiate the sale. *Heighe,* 164 Md. at 269, 164 A. at 675. Another way an exceptant can prove inadequacy of price is if the exceptant can prove that some one else would have paid more for the property than was obtained at the sale, or if the exceptant can offer evidence to show that the property is worth more than the sale price. *Ten Hills,* 176 Md. at 449, 5 A.2d at 832; *see also Preske v. Carroll,* 178 Md. 543, 550, 16 A.2d 291, 294 (1940) (noting that "no exceptant to a sale is entitled to obtain the aid of a court of equity unless he offers to pay a higher price for the property, or at least gives assurance that some other person would be likely to do so, even though there may be some irregularity in the conduct of the sale.").

The winning bid at the foreclosure sale in the present case was $83,800. The assessed value of the entire property based upon the property tax assessment record was $327,730. The record, however, does not reflect an appraised value for the undivided one half interest of Carole and Ricardo that was actually sold. The record also does not reflect any evidence that the trustees engaged in fraud by intentionally placing a low bid or preventing other purchasers from bidding. Further, there is no evidence on the record that Carole and Ricardo attempted to bid at the sale, offered to pay a higher price, or offered evidence showing a higher price could have

been garnered. Therefore, under the circumstances sur-
rounding this sale, the allegation of an inadequate sale price,
to be certain, did not furnish legally sufficient grounds for
setting aside the sale.

## E

The final issue we must address is the proper level
of scrutiny to be applied when the purchaser at the foreclosure
sale is the note holder. We have previously stated that:

> When the purchaser at the foreclosure sale is the mortgagee
> or his assignee, the Courts will examine the sale closely to
> determine whether or not the sale was bona fide and proper.
> The Courts will set aside such a sale upon 'slight evidence of
> partiality, unfairness, or want of the strictest good faith.'

*Southern Maryland Oil, Inc. v. Kaminetz*, 260 Md. 443, 450,
272 A.2d 641, 645 (1971) (quoting *Heighe*, 164 Md. at 270, 164
A. at 676). Despite this heightened standard, exceptants still
bear the burden of providing evidence that the seller did not
act properly. *Id.* As we stated in *Southern Maryland*, the
exceptant is required to "allege in its exceptions some impro-
priety in the conduct of the foreclosure sale or fraud by the
mortgagor known to the purchaser which would render the
sale invalid." *Southern Maryland Oil, Inc. v. Kaminetz*, 260
Md. 443, 453, 272 A.2d 641, 647 (1971). For example, in
*Heighe*, we held that although Mrs. Heighe was the mortgag-
ee, she could freely bid on the property, subject to the
heightened judicial scrutiny of the sale. *Heighe*, 164 Md. at
270, 164 A. at 676. In evaluating various precedent, we stated
that mortgagees, "can sell at once upon default . . . and what
is more important they can become purchasers at their own
sales without having their title impeached upon that ground."
*Heighe*, 164 Md. at 270–71, 164 A. at 676. In this case, the
Petitioners did not produce any evidence of partiality or
impropriety and the mere fact that the purchaser is also the
mortgagee did not relieve Petitioners of that burden. Even
reviewing the sale under a heightened standard, the sale to
Ronald was proper.

Finally, Petitioners argue we should strictly construe the power of sale provision in the deed of trust. Petitioners contend that the powers conferred in the deed of trust should be strictly followed. Petitioners analogize to a power of attorney which "creates fiduciary duties similar" to the power of sale, and which they allege is, ordinarily, strictly construed by this Court.[5]

The issue of construction, however, is not properly before us because Petitioners raised the issue for the first time in this Court. Previously, at the exceptions hearing, Petitioners argued that the power of sale provision permits only the sale of the entire property, but did not address the method of construction for the provision itself. The judge at the exceptions hearing did not find any violation of the terms of the power of sale based on Petitioners' argument, and the Court of Special Appeals affirmed the ratification of the sale. In accordance with the current law in Maryland, we reviewed the sale with heightened scrutiny and analyzed the authority of the trustees to act under the power of sale provision. On these grounds, we affirm the judgment of the Court of Special Appeals and hold the foreclosure the sale was proper.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONERS TO PAY THE COSTS.**

---

**5.** According to Petitioners, strict construction "grants only those powers that are clearly delineated" and because the power of sale in this case does not specifically authorize the sale of the undivided one half interest, the trustees were not authorized to conduct the sale in this manner. Respondents counter that the power of sale in the deed of trust specifically states that "all rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable law." Respondents also rely on *Simard,* and argue that the provision should be interpreted in light of the "language of the trust, by statute, court rule, and common law." For us to adopt Petitioners' strict construction argument would, in effect, limit the trustees' discretion to sell property at foreclosure. We are not inclined to change the law to that extent on the basis of the record before us.