REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1863

September Term, 2012

JOHN S. JOHNSON, JR.

v.

JEFFREY NADEL, *et al.*

Graeff,
Kehoe,
Sharer, J. Frederick
    (Retired, Specially Assigned),

JJ.

Opinion by Sharer, J.

Filed: June 25, 2014

In this mortgage foreclosure case, John S. Johnson, Jr., appellant, seeks to overturn the Order of the Circuit Court for Montgomery County that overruled his exceptions to the foreclosure sale of his property. Jeffrey Nadel, and others, appellees, are the substitute trustees under the purchase money deed of trust that had been executed to secure appellant's obligation on the residential loan.

At issue is whether the circuit court erred by overruling appellant's exceptions to the foreclosure sale and the trustees' report of that sale. Appellant complains that the substitute trustees violated their fiduciary duty in connection with the foreclosure sale.[1]

We are not persuaded by appellant's arguments, and shall affirm.

## BACKGROUND

The salient facts are largely undisputed. In 2007, appellant purchased improved property located at 12800 Timber View Court in Silver Spring, Montgomery County. To effect this transaction, appellant borrowed $696,500, as shown by a promissory note in favor of the lender, Guaranteed Rate, Inc. This promissory note was in turn secured by a purchase money Deed of Trust and Note, dated April 30, 2007.[2] The Deed of Trust contained a power-

---

[1] Appellant frames his question:

> Did the Circuit Court err when it overruled Appellant's Exceptions to Appellees' Report of Sale when Appellant proved to the Court that Appellees knew of a better offer at the time they executed the foreclosure sale and failed to notify or invite the potential buyer to the sale?

[2] "A deed of trust is a security instrument against real property, similar to a mortgage." *Chicago Title Insurance Co. v. Mary B.*, 190 Md. App. 305, 314, *cert. dismissed*,

(continued...)

of-sale provision.[3]  On October 27, 2011, the Note and Deed of Trust were assigned to U.S.

Bank Trust, N.A.  On October 31, 2011, the current substitute trustees were appointed.

Appellant defaulted under the Note and the Deed of Trust in early 2010, and on

November 28, 2011, the substitute trustees initiated the instant residential foreclosure action

by filing an Order to Docket Foreclosure in the Circuit Court for Montgomery County.[4]  *See*

*generally* Md. Code (1974, 2010 Repl. Vol., 2011 Supp.), § 7-105.1 of the Real Property

Article ("RP") (residential property foreclosure procedures); Md. Rule 14-204.

On December 26, 2011, appellant requested foreclosure mediation.  *See* RP § 7-105.1.

This process appeared to bear fruit, for the parties agreed to stay the foreclosure action for

60 days to permit appellant to secure a purchaser.  By agreement, the lender placed the

---

[2](...continued)
417 Md. 384 (2010).  Deeds of trust generally "operate much as would a mortgage with a power of sale, except that the trustees would be exercising the power [of sale], not the mortgagee or mortgagee's assigns." *Simard v. White*, 383 Md. 257, 287 (2004).  They are, according to one commentator, "in legal effect mortgages." 3 Leonard A. Jones, A TREATISE ON THE LAW OF MORTGAGES, § 2290 at 794 (8th ed. 1928).  Maryland Courts have treated "these two types of instruments interchangeably when discussing repayment of their associated notes." *Anderson v. Burson*, 424 Md. 232, 234 n. 1 (2011) (citations omitted).

[3]  A "'power of sale' foreclosure is 'intended to be a summary, in rem proceeding' which carries out 'the policy of Maryland law to expedite mortgage foreclosures.'" *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 726 (2007) (quoting *G.E. Capital Mortgage. Servs., Inc. v. Levenson*, 338 Md. 227, 245 (1995)).

[4]  "A foreclosure plaintiff commences an action to foreclose a deed of trust, which contains a power of sale provision, by filing an order to docket." *Anderson v. Burson*, 424 Md. at 236 n. 6.  The "authority to foreclose through an Order to Docket derive[s] from the power-of-sale provision in the deed of trust[.]" *Shepherd v. Burson*, 427 Md. 541, 544 (20120 (citation omitted).

2

foreclosure "on an internal hold for 60 days to allow the Borrower to pursue a short sale and other loss mitigation options."

After this interval passed without an accord, however, the substitute trustees invoked the power-of-sale provision of the Deed of Trust and scheduled the foreclosure sale for June 18, 2012.[5]   On June 15, appellant moved to stay, or, in the alternative, to dismiss, the foreclosure action.  *See* Md. Rule 14-211(a)(2).  In support of his motion, he claimed that a short sale "will secure the best obtainable price under the circumstances and further the strong preference in Maryland to avoid foreclosures."

Appellant's motion for a stay was driven by the presence of two proposed contracts of sale. The first, submitted on June 9, 2012, offered $601,000.  The offer required that the sale was to be free and clear of "liens and encumbrances."  The second proposed contract, in the amount of $550,000, also required that the property be "free of liens except for any loans assumed by Purchaser."  Both of these proposals were executed by appellant, but had not been approved by the lender.  Although each proposal insisted that the sale must be free and clear of any encumbrance, neither proposal mentioned approval by a junior lienholder or the existence of an Internal Revenue Service tax lien.

The circuit court denied appellant's motion as untimely, *see* Md. Rule 14-211(a)(2), and the foreclosure sale was held on June 18, 2012, as scheduled.  The property was sold to the lender, the "highest and successful" bidder, for $617,605, an amount in excess of

---

[5]   The sale was advertised for three weeks.  *See* Md. Rule 14-210(a).

3

appellant's first two "offers." On June 27, 2012 the substitute trustees filed their Report of Sale. Appellant sought to overturn the sale, and on July 25, 2012, noted exceptions to the sale and report pursuant to Md. Rule 14-305(d), claiming **for the first time** that he had secured yet a third proposed contract for a short sale of the property, with an offer in the amount of $650,000.

This late offer had been submitted on June 13, 2012, but was not brought to the attention of the substitute trustees until after the sale. As with the other bids, this proposed contract also required that the property be free and clear of liens, and gave the offeror the right to withdraw the contract if this condition were unmet. The offeror on this third contract was the same individual who had presented the first ($601,000) offer. Similarly, the third offer did not provide for the IRS lien, the presence of a second deed of trust, or any other encumbrances.[6] Moreover, this offeror failed to demonstrate that he had the funds to provide the down payment. Although appellant's lawyer was present at the sale, the offeror responsible for the eleventh-hour offer was not present.[7]

At the exceptions hearing, appellant's counsel acknowledged that "[t]here is no argument that the price was inadequate." Nor was there an argument that the notice was deficient. He averred, however, that the trustees have the "duty to obtain the best possible

---

[6] At the hearing on appellant's exception to the sale, the appellee reiterated that the third contract failed to account for the IRS tax lien ($16,999), the second trust on the property ($62,007) and commissions for the real estate brokers.

[7] Appellant suggests that the trustees had an obligation to "invite" the offeror to the sale. We concur with the trial court's observation that the trustees bore no such obligation.

4

price, even if that means withdrawing the [property] from the foreclosure sale." Referring to a trustee's standard of care as set forth in *Fagnani v. Fisher*, 418 Md. 371 (2011), Appellant's counsel continued:

> And the "his own property" part is important here because the trustee has a duty not just to the bank, to make sure this property is sold. The trustee is a trustee, the same as we have trustees who sell property pursuant to a divorce decree or another matter. The trustee has an obligation to both parties.
>
> And here, the trustee did not comply with that obligation, I'm sorry, the trustees did not comply with that obligation because there was another offer, a better offer available, $650,000. That offer was available. It could have been taken. A man of ordinary business judgment in selling his own property would not ignore a $650,000 offer, which was $50,000 above the, as the trustees note, the SDAT appraised value. And it was $75,000 above what the bank's BPO was at the time. So it was more than what could be expected to be achieved at a foreclosure sale and –

Counsel acknowledged that a trustee would not be required to entertain an offer well after the sale, but then posited:

> But that doesn't mean the trustee can turn away from offers that are live offers at the time of the foreclosure sale, that are better than what can be expected to be received. And in fact in this case, was better than what actually was received through the subsequent action that the trustee took at the foreclosure sale.

Counsel emphasized that appellant would be left with a deficiency, and represented that appellant had been "speaking to both the trustee[s] prior to the sale, and [the] servicer as well." Again, counsel acknowledged that the sale fetched an "adequate price," but

5

reiterated that "there are two different standards by which the Court has to view a trustee sale." Not only must the price be adequate, he added, but it must also be the "best obtainable[.]"

The court had no quarrel with the proposition that a trustee must strive to secure the highest or best offer, but questioned whether that "best offer" had actually been presented at the foreclosure sale:

> THE COURT: Am I correct that the party that made this offer that you're referring to, the higher offer, did not go to the foreclosure sale, didn't go to the auction where they could have bid that?
>
> [APPELLANT'S COUNSEL]: Well, it's, that's correct, Your Honor, and it's an interesting question you ask, because he was never invited.[8] And I say that –
>
> THE COURT: Well, I don't think you need to be invited, since they need to publish it anyway, right?
>
> [APPELLANT'S COUNSEL]: That's correct, Your Honor. But if you're a trustee with a duty to the owner of the property, and you're aware that there's someone out there with a $650,000 cash offer, and you don't make any effort to let that person know, well, I'm not going to go through with this, but come to the foreclosure sale, that's not complying with the duty to obtain the best obtainable price, and that's the duty that the trustee owes to both parties in this case.

---

[8] This statement is specious at best. Although counsel retreated from this curious statement after the circuit court reminded him that the trustees were not required to "invite" appellant, he failed to apprehend the clear implication of the court's query, *viz.* that the "third offeror" did not show up at the foreclosure sale.

6

THE COURT: All right. Can you just help me again with the chronology here? When did your client inform the trustees that there was this all cash offer waiting out there, that there was a signed sales contract?

Appellant's theory was that the trustees, having been aware of the existence of a better offer, should have pursued that offer, and by failing to do so breached their fiduciary duty to ensure that the best possible price was obtained.

The trustees pointed out that they did not receive the third and highest offer before the sale. Further, they emphasized that the procedural requirements for conducting a foreclosure sale were complied with. The trustees also questioned whether the final offer presented by appellant was indeed *bona fide*.

Following argument, the circuit court rejected appellant's challenge to the sale, ruling in part as follows:

> I think it's pretty clear under Maryland Rule 14-305 that when exceptions are taken to a sale, that the exceptions shall set forth the alleged irregularity with particularity. That is, there must be an allegation of an irregularity in the proceeding of the sale.
>
> As counsel has noted, the ratification, or I should say a foreclosure sale is governed by the Maryland Rules, and that if a party perceives an irregularity in the foreclosure sale, it may file exceptions to the sale of the property. It's settled law that there is a presumption that the sale was fairly made, and that the antecedent proceedings, if regular on the face of the record, were adequate and proper. And the burden is upon the one attacking the sale to prove to the contrary.
>
> Not only must there be a burden of showing that there was error, but that there was prejudice as a result of the error.

7

In this particular case, there really is no alleged error or irregularity in the way in which the property was sold. There's no errors claimed in notice or the actual conduct of the sale.

What is claimed here is that the trustees failed to seize upon another offer instead of proceeding to the foreclosure. And the argument being that where there is a best possible price, or really a better price offered than what they may receive in a foreclosure. Because they don't know what they're going to receive in a foreclosure sale. They don't know who's going to come out to bid. They can't know that in advance. That somehow or other, the foreclosure sale must be stopped when there is word that there is an offer somewhere else. I don't believe that's what the law requires them to do.

In this particular case, since there was public notice of the foreclosure sale, clearly if there was a bidder who wanted to bid more money for this property, I'm pretty sure that the trustees would have accepted it. But that didn't happen in this case.

I don't believe that the proposition that's taken by and argued by the excepting party here, that they need to get the best possible price, extends to the point at which they need to stop the foreclosure proceedings, where there is a possibility of someone buying the property at a different price. Particularly given the fact that this property had other liens upon it other than what the lien was just from the foreclosing party.

And there are always possibilities that exist where a sale will not go through. There have to be title searches. There has to be all sorts of things done.

Basically the excepting party here would have the trustees have to go away from the bird in hand and wait somehow for the two birds in the bush. I don't think that's what they're required to do. If I'm wrong, perhaps I'll be educated on that.

8

So based on that, the Court is going – and also, once again looking at the adequacy of the price, I don't even think that's being argued here. No one has argued that it's inadequate. I don't find that it's inadequate.

Based upon that, the Court is going to order that the exceptions are overruled.

On October 16, 2012, the circuit court denied appellant's motion for reconsideration, and ratified the sale on October 26, 2012. This appeal followed.

# ANALYSIS

## *Standard of Review*

This Court has set forth the standard of review of a ruling on a party's exceptions to a foreclosure sale:

> In ruling on exceptions to a foreclosure sale and whether to ratify the sale, trial courts may consider both questions of fact and law. *See S. Md. Oil, Inc. v. Kaminetz*, 260 Md. 443, 451, 272 A.2d 641 (1971) (explaining questions of fact and law may be raised in exceptions to foreclosure sales). In reviewing a trial court's finding of fact, we do "not substitute our judgment for that of the lower court unless it was clearly erroneous" and give due consideration to the trial court's "opportunity to observe the demeanor of the witnesses, to judge their credibility and to pass upon the weight to be given their testimony." *Young v. Young*, 37 Md. App. 211, 220, 376 A.2d 1151 (1977). Questions of law decided by the trial court are subject to a *de novo* standard of review. *See Liddy v. Lamone*, 398 Md. 233, 246–47, 919 A.2d 1276 (2007).

*Jones v. Rosenberg*, 178 Md. App. 54, 68, *cert. denied*, 405 Md. 64 (2008).

***Introduction***

At the outset, we must determine whether appellant's challenge to the circuit court's ruling is properly before us. When a mortgagor is unsuccessful in attempting to halt a foreclosure sale, or fails to seek a proper pre-sale injunction, the mortgagor's next recourse is to file exceptions to the sale pursuant to Md. Rule 14-305(d). *See Jones v. Rosenberg*, 178 Md. App. at 68. "A debtor may challenge irregularities in the foreclosure sale's procedure by filing post-sale exceptions at the time of the ratification and seek to overturn the sale on those bases." *Greenbriar Condominium, Phase I Council of Unit Owners, Inc. v. Brooks*, 387 Md. 683, 746 (2005). Md. Rule 14-305 governs post-sale procedures, and relevantly provides at Rule 14-305(d):

> (d) **Exceptions to sale.** (1) How taken. A party, and, in an action to foreclose a lien, the holder of a subordinate interest in the property subject to the lien, may file exceptions to the sale. Exceptions shall be in writing, shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice issued pursuant to section (c) of this Rule or the filing of the report of sale if no notice is issued. Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise.
>
> (2) Ruling on exceptions; hearing. The court shall determine whether to hold a hearing on the exceptions but it may not set aside a sale without a hearing. The court shall hold a hearing if a hearing is requested and the exceptions or any response clearly show a need to take evidence. The clerk shall send a notice of the hearing to all parties and, in an action to foreclose a lien, to all persons to whom notice of the sale was given pursuant to Rule 14-206 (b).

This Court has spoken to the nature of "procedural irregularities" which are the focus of Rule 14-305(d) exceptions:

> The procedural irregularities might include: "allegations such as the advertisement of sale was insufficient or misdescribed the property, the creditor committed a fraud by preventing someone from bidding or by chilling the bidding, challenging the price as unconscionable, etc." ... There is a presumption in favor of the validity of a judicial sale, and the burden is on the exceptant to establish to the contrary.

*Jones v. Rosenberg*, 178 Md. App. at 69 (citation omitted). "Rule 14-305 is not an open portal through which any and all pre-sale objections may be filed as exceptions, without regard to the nature of the objection or when the operative basis underlying the objection arose and was known to the borrower." *Bates v. Cohn*, 417 Md. 309, 327 (2010). *See Thomas v. Nadel*, 427 Md. 441, 449 (2012).

At first blush, it would seem that appellant's complaint that the trustees breached their fiduciary duties in connection with the sale would fall without the ambit of those procedural irregularities that are the focus of Md. Rule 14-305(d). A further look into the allegation that a putative "better offer" was ignored at the time of the sale convinces us that such an alleged failure on the part of a trustee constitutes an "irregularity" that may be considered by the exceptions court. "Examples of recognized procedural irregularities include challenges to the advertisement and *the price obtained for the property*." *Fagnani v. Fisher*, 418 Md. at 391 (emphasis added) (citing *Greenbriar v. Brooks*, 387 Md. at 741). Further, we are satisfied that a trustee's alleged decision to overlook or ignore a putative higher bid is not

11

conceptually different from those actions that have been recognized as "procedural irregularities," such as "preventing someone from bidding or ... chilling the bidding[.]" *Jones v. Rosenberg*, 178 Md. App. at 69. Because appellant challenges the procedures by which the trustee overlooked or ignored the higher contract bid, we conclude that this argument is embraced within the ambit of Rule 14-305(d).

### Trustee's Duty

Proceeding on the assumption that a trustee's failure to entertain a more generous bid than those presented at the foreclosure sale does constitute an irregularity that may be reached pursuant to Rule 14-305, we nevertheless discern no error in the circuit court's rejection of appellant's challenge to the foreclosure sale. The circuit court's ruling proceeds along two lines. The court first concluded that appellant's exceptions did not challenge an "irregularity" in the sale.[9] The court then concluded that the trustees did not act improperly in declining to halt the sale process upon learning of new offers.

A trustee is "bound, for the protection of the interests of all the parties concerned, to bring the property into the market as to obtain a fair market price." *Carroll v. Hutton*, 88 Md. 676, 679 (1898). The trustee should exercise the "same degree of judgment and prudence that a careful owner would exercise in the sale of his own property." *Id*. In *Simard v. White*, 383 Md. 257, 312 (2004), *aff'g* 152 Md. App. 229 (2003), the Court reiterated that the

---

[9] Again, the circuit court noted that "[i]n this particular case, there really is no alleged error or irregularity in the way in which the property was sold." We do not affirm the court's judgment on this basis.

12

"trustees, acting under a power of sale, must comply with certain duties and equitable principles in order for the sale to be ratified and the contract formed." The Court quoted from our decision in that case, in which we observed:

> "Trustees acting under a power of sale contained in a deed of trust have discretion to outline the manner and terms of sale, provided their actions are consistent with the deed of trust and the goal of securing the best obtainable price[.]"

*White v. Simard*, 152 Md. App. at 241 (footnote omitted) (quoted in *Simard v. White*, 383 Md. at 312). We further explicated the nature and extent of this duty, drawing on the decision by the Court of Appeals in *Waters v. Prettyman*, 165 Md. 70, 75 (1933):

> **The trustee not only represents the holder of the note secured by the deed of trust, but also the owners of the property, who would be entitled to any surplus remaining after the payment of expenses and the note secured by the deed of trust.** The power of sale is derived from the contract of the parties contained in the deed of trust, but the report of the sale must be made to and ratified by the court [and the purchase price paid] before a deed for the property is given by the trustee to the purchaser. Upon the sale being reported to the court, it assumes jurisdiction and permits those interested in the sale or the proceeds thereof to file objections to its ratification. Upon such being filed, it is the duty of the court, in order to ratify the sale, to ascertain that it was fairly made and under such circumstances and conditions as might be reasonably expected to have produced the largest price obtainable.

*White v. Simard*, 152 Md. App. at 241-42 (emphasis in *White*). As was more recently noted by the Court of Appeals,

> When a foreclosure sale is held pursuant to the terms in a deed of trust, trustees must adhere to certain standards in carrying out their duties. Trustees are under a duty "to exercise

13

the same degree of prudence, care, diligence and judgment, that a man of ordinary business judgment and experience would exercise, in selling his own property." In performing their obligations, trustees have " discretion to outline the manner and terms of the sale, provided their actions are consistent with the deed of trust and the goal of securing the best obtainable price."

*Fagnani v. Fisher*, 418 Md. at 384-85 (citations omitted).

In short, there is no dispute that a trustee on a deed of trust is a fiduciary for all parties. The question becomes whether the submission of the final offer of $650,000 should have compelled the trustees to halt the sale or reopen it once they learned of the existence of the latest offer. On this record, we are not persuaded that the trustees were bound either to halt, or even to reschedule, the foreclosure sale, even if they learned of an offer just prior to the sale.[10]

There were no assurances that the bid would hold up. Moreover, we recall three significant facts: (1) the fact that the bidder did not appear at the sale; (2) appellant's counsel did not attempt to alert the trustees, pre-sale, to the existence of the bid, or, if so, alleviate any

_____

[10] Although counsel represented that appellant had communicated the best offer to Vericrest, the servicer, the offer had not been passed onto the trustees until after the sale. As one of the trustees told the court:

However, the question comes and begs to what end does the trustee have to go to obtain the best price. First of all, the contract that was presented for 650, as the Court aptly pointed out, was not given to us as trustees. If anything, it was given to Vericrest. It was sent to us post-sale. That's number one.

14

concerns the trustees might have as to the bona fides of the offer; and (3) the offer did not account for the tax lien or junior mortgage on the property.

The trustee "is not bound to accept every bid. He is necessarily clothed with a prudent and sound discretion, and the court will always sustain him in refusing bids which would manifestly defeat and frustrate the very object and purpose of a sale." *Gray v. Veirs*, 33 Md. 18, 22 (1870). *See D'Aoust v. Diamond*, 424 Md. 549, 583 (2012). Further, "[a] trustee is also entitled to exercise personal judgment when determining the price to accept for the sale of the property." *Id.*

In the final analysis, we are not inclined to question the actions of a trustee who acts in good faith in rejecting an offer, or who was unaware of the existence of an offer at the time of the foreclosure sale. A trustee is not obligated to reopen the sale to entertain an offer, whether sound or speculative, that arrives after the sale has been completed.

> [I]f a borrower was able to raise any sort of exception after the foreclosure sale, there undoubtedly would be a chilling effect on interested prospective purchasers coming to sales. Prospective third-party purchasers would be unable – based on practical notions of what constitutes due diligence – to gauge against such claims the risk of an intended investment. Being a bona fide purchaser for value would not mean as much or even offer the traditional safe harbor underlying that status.

*Bates v. Cohn*, 417 Md. at 329-30.

Given the presumption in favor of the regularity of the sale, the lack of any challenge to the notice and description of property, the lack of any demonstration that the amount offered was firm and the bidder capable of appearing at the sale to close a deal, and, finally,

15

the fact that the trustees had not learned of the high bid until after the hammer had fallen on the only bid advanced at the sale, we are not persuaded that the circuit court erred by rejecting appellant's exceptions to the sale and report.

The Court of Appeals noted that the "court will ordinarily ratify a sale made by a trustee in the absence of fraud or improper dealing or a clear inadequacy of price *as of the time* the sale was made[.]" *D'Aoust v. Diamond*, 424 Md. at 584 (citation and internal quotation marks omitted). The foreclosure sale before us, and the conduct of the substitute trustees, pass muster. There is nothing in this record to support a conclusion that the trustees failed to exercise an appropriate degree of prudence, care, diligence, and judgment.

### *Standard of Review - A Reprise*

The challenge to the trustees' actions in the conduct of the foreclosure sale is without merit not only because appellant has not proven any irregularities in the process by which any interested party has learned about the extent of the debt, the initiation of the foreclosure proceedings, or the notice of the foreclosure sale itself. Appellant has also failed to upset the foreclosure sale because the substitute trustees were entitled to reject an eleventh-hour offer, the legitimacy of which could properly have been questioned at the time. While the trustees may enjoy some discretion in their conduct, the nature and extent of their fiduciary duty, to whom that duty is owed, and the issue of whether they discharged that duty are questions of

16

law.  Thus, the aforementioned reviews for clear error in the circuit court's findings of fact,

and *de novo* scrutiny for conclusions of law still obtain.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED;**
**COSTS ASSESSED TO APPELLANT.**
